Charles Earl McNEELY, Appellant,

v.

UNITED STATES of America,
Appellee.

Robert Eugene JOHNSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 18108, 18109.

United States Court of Appeals
Eighth Circuit.

Dec. 28, 1965.

**914**

Norman S. London, St. Louis, Mo., for appellants.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before VOGEL, Chief Judge, and BLACKMUN and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

These are appeals from the United States District Court for the Eastern District of Missouri in which appellants were jointly tried before a jury and convicted of violating Title 18, U.S.C.A. § 2115, burglary of a United States Post Office.

Sometime during the night of July 26 or early morning of July 27, 1964, a branch Post Office in Maplewood, Missouri, was forceably entered and an unsuccessful attempt was made to break into the safe. This burglary was unbeknown to Patrolman Walton of the neighboring suburb of Brentwood when he observed two men in an automobile parked with its motor running in a closed filling station. The time was 12:45 a. m. July 27, 1964. Patrolman Walton pulled his unmarked police car into the service station and the parked car sped away in the opposite direction. Patrolman Walton pursued the suspicious car and with his spotlight signaled it to stop. The signal was not heeded, and the car continued at speeds exceeding the posted limit of 30 m. p. h. by at least 15 miles per hour. As the car was making a right-hand turn directly in front of Patrolman Walton, he observed the passenger in the front seat push a large canvas bag from the front window. As the bag hit the pavement he saw "pieces of metal" come out of the bag, one of which he specifically recognized as a sledge hammer. He heard the sound of metal striking the pavement, and was forced to swerve his automobile to avoid running into the scattered contents of the bag. A short time later the fleeing car turned into a dead end street; Patrolman Walton blocked the entrance of the street and arrested the occupants on the stated charge of littering. The driver of the car was identified as defendant McNeely and the passenger was defendant Johnson. Upon returning the few blocks to where the bag was thrown from the car, Patrolman Walton and an assisting officer discovered some heavy duty gloves and tools of the type commonly used to commit burglaries. Appellants

were promptly arrested for the Missouri felony of illegal possession of burglary tools. While they were in custody of the Brentwood police, appellants' clothes were separately taken from them and sent in separate packages to a United States Government laboratory for examination. Appellants were subsequently transferred to Federal authorities and tried for burglary of the Maplewood Post Office.

The bag, tools, and gloves found on the street were introduced at the trial. The tools were connected with the scene of the crime by comparisons of these tools to other evidence found at the scene. Markings or striations from the face of the sledge hammer were matched with markings found on the handle of the safe. A broken punch recovered from the safe dial was compared with the broken end of a punch found with the tools. Finally, bits of paint and debris found on these tools and the gloves were compared with samples of debris gathered from the scene of the burglary. The jury was allowed to make visual comparisons between the evidence gathered from the street and the evidence from the Post Office and its safe. In addition, a government witness testified as an expert that the above exhibits compared positively with each other.

From the clothes of McNeely and Johnson were lifted certain paint chips and minute debris. These chips and debris were likewise compared with the chips and debris found on the tools and gloves and with debris samples gathered from the Post Office. The jury was allowed to make a visual comparison through a microscope, and the government's expert witness testified that the debris on appellants' clothing was identical to the debris from the scene of the burglary and likewise was identical to debris found on the tools and gloves.

Appellants argue that the admission into evidence of the tools and gloves found in the street was erroneous because the connection between these tools, the appellants, and the crime in question requires the piling one inference upon another. For instance appellants say that it is only an inference that these tools were in the bag thrown from the car. To connect appellants to the crime, the jury must base this inference on the additional inference that these tools were used in the commission of the crime. This is not permissible as a matter of law, say appellants.

They also point out that the evidence found on the clothing of McNeely is admissible only against McNeely and the evidence on Johnson's clothing is admissible only against Johnson; and, contend it was error not to caution or instruct the jury to this effect, even though appellants made no such request of the Court.

Finally, appellant McNeely complains that his arrest was illegal in that the stated grounds for arrest was littering, when in fact he admittedly was not observed throwing anything from the car. Therefore, the resultant search and seizure of his clothing was illegal and the evidence seized therefrom was inadmissible.

It is the opinion of this Court that none of the objections are meritorious. and that the trial court's judgments should be affirmed.

■ As to appellants' first contention, we agree that it is improper for a court to allow a jury to draw inferences based solely upon another inference. However, that well-known rule of evidence has no application to the facts of this case. The jury was not asked to infer that the tools in question were in the possession of appellants and then infer that the tools were used in the burglary. There is direct positive evidence on this issue. Furthermore, there was positive, direct, and circumstantial evidence that the tools in question were in the possession of appellants and thrown from their fleeing car.

First, there is no doubt that these tools were positively identified as the tools used in the burglary. The impressions made by a hammer on the safe door matched the impressions found upon the sledge hammer that was recovered

from the street. The broken punch found in the safe dial was identified as the remaining half to the piece of punch found with the tools. In addition small particles of paint and dust which were removed from the scene of the crime identically matched particles which were removed from the tools.

Second, from the web of circumstantial and direct evidence there can be little doubt that these tools were in the possession of appellants and were thrown from their car. While in close pursuit of the car occupied by appellants, Officer Walton directly observed defendant Johnson throw the identified bag from the car. When the bag hit the street, in addition to hearing the sound of metal striking the pavement, he was able to testify that he saw "pieces of metal" fly from the bag, and identify one of the pieces as a sledge hammer. Patrolman Walton testified that the street was clear prior to the bag being jettisoned, that he had to swerve to keep from running over the discharged objects, and that upon his return within a few minutes to the spot where the bag was thrown he found the bag containing some tools, gloves and various other tools scattered near the bag. All of this took place in the early morning hours on a residential street that Patrolman Walton observed to be completely deserted except for himself and appellants. The tools, bag, and gloves found in the street were identified by Patrolman Walton and admitted into evidence.

In addition, small particles of paint and dust were removed from the clothing of McNeely and Johnson. Identical particles were removed both from the tools and from the scene of the crime. This evidence connects the tools to the appellants and places all of them at the scene of the burglary. Since the tools can be further identified as the ones actually used in the attempt to crack the safe, the web of evidence strongly implicates appellants as the perpetrators of the burglary. The involvement of appellants in the burglary was completed with no impermissible use of evidence.

The direct evidence of appellants' attempting to rid themselves of burglary tools while fleeing from the law points an accusatory finger at them; the circumstantial evidence matching these tools to the scene of the crime by striations on the tools and the broken matching punch, together with their clothes containing debris and paint chips from the scene of the offense, irrefragably marks appellants as the perpetrators of the Post Office burglary. The direct evidence is clear. The circumstantial evidence is consistent with the guilt of appellants and is inconsistent with every reasonable hypothesis of their innocence. From this evidence the jury could conclude guilt beyond a reasonable doubt. Strauss v. United States, 311 F.2d 926 (5 Cir. 1963).

Our position on this issue is fortified by a prior decision of ours in Smith v. United States, 331 F.2d 265 (8 Cir. 1964). That case dealt with the same evidentiary issue and presented a factual situation quite similar, though not as strong, as the facts in the case at bar. In Smith a police officer was pursuing a fleeing car on a highway at speeds in the vicinity of 100 miles per hour. At a distance of about 300 feet the officer observed, "an object moving across the highway * * * He also saw numerous objects appearing to be paper fluttering in the air, but concededly *he did not see the bag or other objects thrown from the moving car* * * *" (Emphasis supplied). In allowing introduction of testimony concerning burglary tools, checks, and currency which allegedly came from the speeding car, this Court at page 279 echoed what continues to be our sentiment in this case, "We do not view this testimony as allowing the jury to pile inference on inference and thus arrive at a verdict of guilty based upon mere suspicion and conjecture."

As to appellants' second argument, again no one would seriously challenge the proposition that evidence taken from one defendant, under circumstances presented here, should not be considered against a co-defendant, and when re-

quested the Court should caution or so instruct the jury. This principle, however, has no application in this case because appellants made no effort to inform the trial court of their desire to have the jury so instructed. Before making the objection to the introduction of the particles found on the clothing of both appellants, counsel for appellants asked permission to approach the bench. While out of the jury's hearing, counsel made objection to each exhibit being considered against both defendants. While still out of the hearing of the jury, the Court sustained appellants' position and ruled the evidence was admissible only against the defendant from whom it was seized. At no time did appellants' counsel request the jury be cautioned nor did he submit for consideration of the Court any limiting or cautionary instructions. So, not only did appellants' counsel fail to request the Court to instruct the jury on the use of the evidence, he directly initiated the procedure of which he is complaining. For had he made the objection openly to the Court, with the Court's ruling thereon being audible to the jury, the Court no doubt would have explained to the jury the limitations on the use of the evidence.

It is an axiom of trial procedure that counsel must take the initiative in protecting the rights of his clients. The cases are too numerous to cite which hold that to preserve for review any acts or omissions of a trial court the party must make "known to the court the action he desires the court to take or his objection to the action of the court and the grounds therefor; * * *" Rule 51, Fed.R.Crim.P. A party may not stand idly by, watching the proceedings and allowing the Court to commit error of which he subsequently complains. Thomas v. United States, 287 F.2d 527 (5 Cir. 1961).

In the present case appellants are complaining about a situation which they, through their own counsel, are primarily responsible for bringing about. Appellants claim, however, that the trial court, regardless of counsel's omissions, was required to instruct the jury. In other words, the trial court in failing to act on its own initiative committed plain error as provided in Rule 52(b), Fed.R. Crim.P. To come under the exception to the normal rule requiring objection and under the provisions of this rule of "plain error" appellants must demonstrate that the action of the trial court affected their "substantial rights" resulting in a miscarriage of justice. Black v. United States, 309 F.2d 331 (8 Cir. 1962) cert. denied 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765; Harris v. United States, 297 F.2d 491 (8 Cir. 1961).

Appellants assert that the jury was required to be instructed that the paint and debris coming from McNeely's clothes be considered only against McNeely and the paint and debris coming from Johnson's clothes be considered only against Johnson. The paint chips and dust found on McNeely's clothes, however, were of essentially the same type and quality as the debris recovered from Johnson's clothing. On the clothing of McNeely and on the clothing of Johnson was debris which matched samples gathered from the scene of the burglary. The debris from each of the defendants likewise matched the debris found on some of the burglary tools. Therefore, this is not a case where evidence admissible against one defendant is of a different quality and nature than the evidence admissible against a co-defendant. Due to the identical quality of the evidence found on both defendants, we do not feel that the lack of instruction on its proper use substantially prejudices either of the appellants.

In addition, when the jury was allowed to view the evidence from each of the defendants' clothes through the microscope, evidence seized from McNeely was clearly designated as such, and evidence from Johnson was clearly designated as coming from Johnson. The evidence against each was persuasive and did not require any additional probative evidence on the issue of placing the clothes at the scene of the offense.

Finally, this was not the only evidence linking appellants to the crime. It was clear from other evidence that the tools were used in the burglary, and it was demonstrated that the appellants threw these tools out of their car while being pursued by Patrolman Walton.

It appearing that appellants failed to properly request a cautionary instruction to the jury, we do not believe it has been shown that the trial court committed what is known as "plain error." A complete review of the record fails in any way to indicate that the trial court's omission to instruct the jury on its own volition substantially affected the rights of appellants, thus resulting in a miscarriage of justice.

The final objection to the conviction is that of appellant McNeely's asserted illegal arrest. This assertion is wholly without merit. When Patrolman Walton observed objects being thrown from the car he could no doubt arrest the person seen throwing them for a violation of the municipal ordinance against littering. It is likewise highly conceivable that the driver of the automobile instructed or encouraged the littering and would therefore be equally guilty with the principal offender. Especially is this true where the car is apparently fleeing from the officer and the occupants, as here, appear to be eagerly attempting to dispose of objects in their joint possession. Even though the eventual conviction of the driver on the charge of littering would admittedly be difficult, this does not mean there was no probable cause to believe the driver was an aider and abetter to the crime and subject to arrest. We hold, therefore, that even though Patrolman Walton did not see McNeely throw the bag from the car, he was justified in arresting both of the occupants on the charge of littering.

Furthermore, the circumstances of the case related earlier (two men sitting in a car with its motor running, late at night, in a closed filling station, speeding away at the approach of an officer, failing to heed a warning, throwing something from the car having the appearance of tools) would give the officer probable cause to believe the occupants of the car had committed the felony of either burglary or possession of burglary tools. Being outnumbered two or one on a deserted street at night, we cannot hold that the arresting officer to make a valid arrest must immediately state the actual and correct grounds for arresting appellants when he had probable cause for making such an arrest. Such a requirement could be dangerous to the arresting officer and would be an additional unnecessary burden on enforcement officials. The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law, following the heat of a chase, to always be able to immediately state with particularity the exact grounds on which he is exercising his authority. We believe that if the officer had probable cause to arrest and otherwise validly performed the arrest, he is not under the circumstances of this case required to immediately recognize and accurately broadcast the exact grounds for this action or suffer the arrest to come under constitutional criticism. Therefore, since Patrolman Walton had probable cause to believe the occupants of the car were engaged in felonious activity, the arrest of McNeely was valid regardless of the initially stated grounds for arrest.

Finally, when Patrolman Walton was reinforced and the parties returned to the scene of the jettisoned bag both appellants were immediately arrested on the stated charge of possession of burglary tools, of which there can be no doubt that probable cause existed. Due to this additional discovery, we do not believe that the first arrest of McNeely a few minutes before, regardless of its legality, had any effect on the legality of this second arrest. The search and seizure of which McNeely complains did not take place until after this second, obviously valid, arrest on the charge of possession of burglary tools. Therefore, at the time of the search McNeely was in legal custody as the result of a valid ar-

rest, and a search of his person incidental to that arrest is legally permissible.

For any one or all of the above three reasons it is our opinion that McNeely has not been the victim of an illegal arrest, search or seizure and that the evidence seized was properly admitted against him.

In light of the above stated reasons it is the opinion of this Court that the judgments of the trial court convicting appellants of burglary of a Post Office should be affirmed.

Judgments affirmed.