Edward W. **MULLIGAN**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18000.

United States Court of Appeals
Eighth Circuit.

April 19, 1966.

John L. Boeger, St. Louis, Mo., made argument for appellant and filed brief with Morris A. Shenker and Bernard J. Mellman, St. Louis, Mo.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VOGEL, Chief Judge, BLACKMUN, Circuit Judge, and STEPHENSON, District Judge.

STEPHENSON, District Judge.

Appellant was convicted upon a finding of guilty by a jury of the charge that during the taxable year, July 1, 1964, through June 30, 1965, he willfully and knowingly engaged in the business of accepting wagers as a bookmaker, while willfully and knowingly failing to pay the tax imposed by 26 U.S.C. § 4411 and in violation of 26 U.S.C. § 7203.[1] He seeks reversal of his conviction upon the grounds that certain material seized in violation of the Fourth Amendment was erroneously admitted in evidence during his trial and for the further reason that the evidence failed to establish that he was engaged in the business of accepting wagers, an essential requisite to liability for payment of the occupational tax imposed by the statute.

---

1. Appellant was sentenced to nine months imprisonment and fined twenty-five hundred dollars ($2,500) and costs.

In reviewing the trial record the facts established at the hearing on appellant's motion to suppress evidence will be included to the extent they are germane to the issues now raised concerning the alleged error in admitting material seized at the time of appellant's arrest.

Special Agent Richard Carr of the Intelligence Division of the Internal Revenue Service was assigned to the St. Louis Office. In September 1964, during an investigation of gambling activity in that area, he met Barry Jackson Moore and commenced placing bets with him. Moore did not learn of Carr's identity as a Special Agent until October 30, 1964, when Carr arrested him. After the arrest Carr arranged for Moore to place a twenty dollar bet for him with appellant at the restaurant where appellant was employed. Under the arrangements made, Carr was present when Moore placed the bet and gave a pre-arranged signal indicating to Carr that appellant had accepted the money and the bet tab accompanying it. Thereupon Agent Carr arose from where he was seated and followed appellant into a back room where he immediately identified himself, placed appellant under arrest and seized the bet tab (plaintiff's exhibit 1) and the twenty dollar bill which appellant then had in his hands. Carr telephoned for additional agents who arrived within twenty minutes and completed a search of the premises. In the room where appellant was arrested the agents seized four pieces of paper held together by a paper clip from under a piece of linoleum on top of a shelf (plaintiff's exhibit 3) and a folded bet tab on the shelf to the right of the telephone (plaintiff's exhibit 2).[2]

Appellant filed a motion to suppress evidence prior to trial. After a hearing the motion was denied. Appellant renewed his objection to the three exhibits (1, 2 and 3) when they were offered in evidence during the trial.

Appellant urges that the search and seizure was invalid because if probable cause existed for the arrest of appellant, such probable cause existed in ample time to obtain a warrant; and therefore the search without a warrant and the reception of the fruits thereof into evidence contravened the Fourth Amendment to the Constitution. We must first examine the circumstances surrounding the arrest.

The validity of a search without warrant incident to an arrest is dependent initially on a lawful arrest. Draper v. United States, 358 U.S. 307, 310–314, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In the matter at hand the evidence compels a finding that the arrest was lawful. Prior to the arrest Agent Carr had observed appellant's place of business on several occasions and had observed what he thought to be signs of gambling. He knew of appellant's previous record.[3] The witness, Moore, had informed Agent Carr that he, Moore, had placed bets with appellant for over two and one-half years. Finally it must be observed that appellant committed an offense against the United States related to the internal revenue laws in the very presence of Agent Carr.[4] We find the arrest was lawful.

2. While in custody in the rear room appellant was observed throwing some money behind a stove. About an hour after appellant's arrest money was obtained from behind the stove after the stove was disconnected by the gas company. Neither the money nor a few other items found were offered in evidence at the trial.

3. Appellant pled guilty to a similar offense in the same court in 1963.

4. Title 26 U.S.C. § 7608 is as follows:
  "(b) Enforcement of laws relating to internal revenue other than sub-title E.—
  (1) Any criminal investigator of the Intelligence Division or of the Internal Security Division of the Internal Revenue Service whom the Secretary or his delegate charges with the duty of enforcing any of the criminal provisions of the internal revenue laws or any other criminal provisions of law relating to internal revenue for the enforcement of which the Secretary or his delegate is responsible is, in the performance of his duties, au-

Appellant further contends that since there was ample time to secure a search warrant the agent was compelled to do so. However, the crucial test is not whether it was reasonable to procure a search warrant, but whether the search was reasonable. United States v. Rabinowitz, 339 U.S. 56, 64–66, 70 S. Ct. 430, 94 L.Ed. 544 (1950); United States v. Sorenson, 330 F.2d 1018, 1020 (2d Cir. 1964); Janney v. United States, 206 F.2d 601, 604 (4th Cir. 1953). In the matter at hand, Agent Carr had strong reasons for suspecting that appellant was engaged in bookmaking, but it was not until the arranged bet was made in his presence that the occasion for the arrest and subsequent search arose. After accepting the bet appellant moved into the back room where he was arrested. The search then made was incidental to the arrest and, under the circumstances, entirely reasonable. To now speculate that there might have been time to secure a search warrant does not alter the fact that the search actually made was reasonable. The conclusion drawn from retrospective speculation does not nullify an otherwise lawful search. The relevant test is whether the search itself was reasonable.

"The test of reasonableness cannot be stated in rigid and absolute terms." Harris v. United States, 331 U. S. 145, 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399 (1947). "Each case is to be decided on its own facts and circumstances." Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931). The requirements of reasonableness have been thoroughly discussed by this court in Haas v. United States, 344 F.2d 56, 58–60 (8 Cir. 1965). The search must be incident to the arrest and made contemporaneously therewith.

It cannot be remote thereto in time or place. In the cause at hand the items seized and offered in evidence were all obtained from the rear room where appellant was arrested. Additional search was made of the front part of the restaurant and two trash cans just outside the door of the rear room. The area searched was under the immediate control of appellant. Most of the search was made within an hour of the arrest. There was some delay in completing the search behind the stove. Appellant shortly after his arrest was observed throwing some money behind a stove. The gas company was called to disconnect the same, and the money then retrieved. The entire search, including the stove incident, was concluded within about two hours after the arrest. We hold the search was reasonable as to time and area searched. Appellant also contends the items seized, particularly the slips of paper admitted in evidence, were not means used to commit the crime charged, and thus were not lawfully subject to seizure. However, one of the elements of the crime charged is that appellant was engaged in the business of accepting wagers. Suffice to say that betting tabs or memoranda of bets were instrumentalities of the crime, the means by which it was committed. Harris v. United States, supra 331 U.S. at 154, 67 S.Ct. 1098; Abel v. United States, 362 U.S. 217, 234–240, 80 S.Ct. 683, 4 L.Ed. 2d 668 (1960); United States v. Joseph, 174 F.Supp. 539, 544 (D.C.E.D.Pa.1959) aff'd on other grounds, 278 F.2d 504 (3d Cir.) cert. denied 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960); Rule 41(b) (2) Fed.R.Crim.P.

Appellant next contends the trial court erred in refusing to permit appellant to question Agent Carr at the hearing on the motion to suppress as to the

---

thorized to perform the functions described in paragraph (2).

(2) The functions authorized under this subsection to be performed by an officer referred to in paragraph (1) are—

\* \* \* \* \*

(B) to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony."

reliability of his alleged informer. He cites, Beck v. State of Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), where it was stated that "when the constitutional validity of that arrest was challenged, it was incumbent upon the prosecution to show with considerably more specificity than was shown in this case what the informer actually said, and why the officer thought the information was credible. We may assume that the officers acted in good faith in arresting the petitioner. But 'good faith on the part of the arresting officers is not enough.'" When the constitutional validity of appellant's arrest was challenged, it became the function of the court to determine whether the facts available to the arresting officer at the moment of the arrest would warrant a man of reasonable caution to believe that an offense had been committed. See p. 96 of 379 U.S. p. 229 of 85 S.Ct.

In the matter at hand Agent Carr had already testified regarding the wager made in his presence by the informant with appellant. Carr also testified that informant told him he had been placing bets with appellant for two and one-half to three years. Carr had observed what he thought to be signs of gambling at appellant's place of business on previous occasions. He was aware of appellant's previous record.[5] This is in sharp contrast to the situation in Beck v. State of Ohio, supra, where the arresting officer knew of petitioner's previous criminal record, had some reports about petitioner, and nothing had occurred which indicated unlawful activity when petitioner's auto was stopped and petitioner arrested. The extent and scope of inquiry permitted during the hearing on the motion to suppress evidence was within the discretion of the trial court. In Bass v. United States, 326 F.2d 884, 888 (8th Cir. 1964) this court

observed that "* * * where the officers have the word of an informant, even though his reliability was not proven, plus other circumstantial evidence tending to show guilt, there is probable cause for the arrest." See also, Rodgers v. United States, 267 F.2d 79, 88 (9th Cir. 1949). We find no abuse of discretion in this instance. A valid basis for the arrest without a warrant had been clearly established. Nothing more is required.

Lastly appellant asserts that the evidence was not sufficient to show that appellant was liable for payment of the tax. He urges that the evidence was insufficient to show that he was "engaged in the business of accepting wagers"[6] as opposed to betting in a private capacity. It is clear that the statute excludes from the tax the purely "social" or "friendly" type of bet. United States v. Simon, 241 F.2d 308, 310 (7th Cir. 1957). The trial court instructed the jury as to appellant's position "that he is not liable for the $50 special tax for the reason that he is not in the business of accepting wagers as a bookmaker" and the law applicable thereto. Appellant raises no objection to the instructions. Therefore, we must determine only whether there was sufficient evidence to support a finding that appellant was engaged in the business of accepting wagers. The witness Moore testified that during the period in question, he would bet on the horses with appellant, sometimes two or three times a week and sometimes as often as four or five times a week. He placed the bets at appellant's place of business and followed the procedure of making out a slip indicating his betting selection and delivering the same with the money bet to appellant. Appellant would either accept or reject the bets. He paid off the winnings to the witness. In addition, on the day of ap-

---

5. See note 3, supra.

6. Title 26 U.S.C. § 4411 reads in part: "There shall be imposed a special tax of $50 per year to be paid by each person who is liable for tax under section 4401 * * *."

Title 26 U.S.C. § 4401(c). "Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter * * *."

pellant's arrest, Agent Carr witnessed the same general procedure and followed appellant into the rear room where he recovered the betting slip and money tendered in the "arranged" bet. During the search that followed agents of the Internal Revenue Service picked up approximately $1240 in currency. Further recitation of the record would serve no useful purpose. It is abundantly clear there was ample evidence to support the jury's finding that appellant was engaged in the business of accepting wagers as a bookmaker, as charged by the government. See, Leone v. United States, 340 F.2d 317 (1st Cir. 1965); United States v. Simonetti, 326 F.2d 614 (2d Cir. 1964); United States v. Simon, supra, 241 F.2d at 308–310.

We conclude upon the entire record that appellant was accorded a fair trial and the evidence amply supports the judgment of guilt. Affirmed.