Ralph Leroy **KLINGLER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19209.

United States Court of Appeals Eighth Circuit.

April 3, 1969.

---

Marvin D. Keller, Sioux Falls, S. D., for appellant.

Gene R. Bushnell, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; Harold C. Doyle, U. S. Atty., Sioux Falls, S. D., with him on brief.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Ralph Leroy Klingler was convicted of violating 15 U.S.C. § 902(e), a section of the Federal Firearms Act which prohibits a former convict, such as Klingler was proven to be, from transporting a firearm in interstate commerce. Appellant Klingler urges reversal on grounds that: (1) the trial court erred in denying his motion to suppress the firearm in question as evidence because it was the fruit of an illegal search of an automobile in which he had been a passenger; and (2) the trial court, contrary to the mandate of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), erred in allowing an agent for the Alcohol and Tobacco Tax Division of the Treasury Department to testify with regard to inculpatory statements made by Klingler during a custodial interrogation. The rulings of the trial court were correct. We affirm the conviction.

## I. THE SEARCH AND SEIZURE ISSUE

Shortly after 4:00 A.M. on May 17, 1967, Officer Kisecker of the Sioux Falls, South Dakota, Police Department was advised via police radio that a bandit wearing sunglasses, a green jacket, and needing a shave had held up a Sioux Falls service station earlier that morning. The prime suspect was one of two occupants of a 1955 or 1956 white and brown Pontiac, which bore Minnesota license plates and had two metal con-

struction helmets visible through the rear window.

At about 5:00 A.M., Officer Kisecker, while driving a patrol car on routine duty, observed two men in an automobile parked in a private parking lot in Sioux Falls. As Kisecker passed the parking lot, the automobile began to move. The officer turned his car around and stopped the suspects. Their vehicle, a 1957 white and salmon or coral Pontiac bearing South Dakota license plates, contained two metal construction helmets visible through the rear window. Kisecker asked the occupants of the vehicle, Klingler, a front-seat passenger, and Albert Mager, the driver, to get out.

Klingler and Mager each produced driver's licenses as identification and stated that they were from Huron, South Dakota, that they were looking for employment in Sioux Falls, that they had driven all night and had arrived in the city early that morning, and that they had been sleeping in the automobile for about four hours. The clothing on both men was in disarray. Klingler was wearing an olive-colored waistcoat and had about a two days' growth of beard. Kisecker noted that there were sunglasses on the automobile's dashboard.

Responding to Kisecker's radio call to police headquarters, Officers Konda and Nygaard arrived in their patrol cars. Klingler and Mager were then arrested for vagrancy.[1] No attempt was made by the police officers to determine whether either suspect had money, although suit-

cases, personal belongings, and a box of food were in the car.

Officer Nygaard commenced a search of the Pontiac just as Mager and Klingler were being placed in separate police vehicles. Nygaard discovered a .22 caliber pistol under a ventilated cushion on the front seat. Such discovery formed the basis for the Federal Firearms Act charge against Klingler and Mager.[2]

THE ARREST

■ A "seizure can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant". Rios v. United States, 364 U.S. 253, 261, 80 S.Ct. 1431, 1436, 4 L.Ed. 2d 1688 (1960); Stoner v. State of California, 376 U.S. 483, 486, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). In this case, if the search of the automobile and seizure of the pistol is to survive the proscription of the Fourth Amendment, it must be under the exception for searches incident to a lawful arrest. See, e. g., United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. Tahash, 353 F.2d 119 (8th Cir. 1965). The validity of such a search and seizure is dependent initially upon a lawful arrest, Draper v. United States, 358 U.S. 307, 310–314, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Mulligan v. United States, 358 F.2d 604, 606 (8th Cir. 1966), the lawfulness of which is to be determined by state law insofar as the arrest is not violative of the Constitution. Miller v. United

---

1. The Sioux Falls ordinance provides, in pertinent part:

 "9.204 Vagrancy. It shall be unlawful for any vagrant to be or remain within the limits of the City.

 A vagrant is an idle person, having no legitimate means of support, who does not seek or desire lawful employment, and who subsists through charity of others or by unlawful means. Whenever it shall, in a prosecution under this Section, be shown that any person who is able to work:

 (a) Wanders about in idleness or lives in idleness without property sufficient for his support; or

 (b) Leads an idle, immoral, or profligate life and does not work; or

 (c) Loafs, loiters, or idles in the City, upon a public highway, or about any public place without any regular employment and without sufficient property for his support;

 \* \* \* \* \*

 it shall constitute a prima facie presumption that such person is a vagrant as defined in this section. 9.204"

2. Mager, jointly charged with the same firearms violation, pleaded guilty and received a suspended sentence. He testified against Klingler in the trial below.

States, 357 U.S. 301, 305, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 1201, 22 L.Ed.2d 474 (1969). The constitutional validity of an arrest is dependent upon the existence of probable cause. E. g., Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949).

Under South Dakota law, a peace officer may arrest without a warrant: (1) for a public offense committed or attempted in his presence; (2) when a felony has in fact been committed, and the officer has "reasonable cause" for believing the person arrested to have committed it; and (3) at night on "reasonable cause" even though it afterwards appears that a felony has not been committed. S.D.Code § 34.1609 (Supp.1960).

■ "Reasonable cause", as used in the above statute, is equated with the Fourth Amendment's requirement of probable cause. See, e. g., Reed v. United States, 401 F.2d 756 (8th Cir. 1968); Theriault v. United States, *supra*. Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a belief by a man of reasonable caution that a crime has been or is being committed. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); see also, Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Beck v. State of Ohio, 379 U.S. 89, 98, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Gullett v. United States, 387 F.2d 307, 311 (8th Cir. 1967), cert. denied, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968). Fourth Amendment protection requires that courts apply an objective standard in judging the officer's conduct. That interrelationship is stated in the "stop-and-frisk" case of Terry v. State of Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), as follows:

"* * * The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? * * * And simple ' "good faith on the part of the arresting officer is not enough." * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' Beck v. State of Ohio, *supra*, at 97, 85 S.Ct. 223 at 229."

■ The details concerning a case which are furnished an officer via police radio can be taken by him as reasonably trustworthy information upon which to base his actions. Nash v. United States, 405 F.2d 1047 (8th Cir., 1969); Montgomery v. United States, *supra*; Theriault v. United States, 403 F.2d 605.

■ There was probable cause for Klingler's arrest for the felony charge of robbery. The robbery suspect was described as "wearing a green jacket, a pair of sunglasses, and needing a shave". Klingler was wearing an olive waistcoat, a pair of sunglasses was on the automobile's dashboard, and he had two days' growth of beard. The automobile in which Klingler was a passenger, and one of two occupants, was a 1957 white and salmon or coral Pontiac, with South Dakota plates and two metal construction helmets visible through the back window. This substantially tallied with

the description broadcast over the police radio. The factors that would have justified Klingler's arrest for robbery compare favorably with the facts in other cases in which we have approved warrantless arrests. See, e. g., Nash v. United States, *supra*; Reed v. United States, *supra;* Kayser v. United States, 394 F.2d 601 (8th Cir. 1968), cert. denied, 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed. 2d 206 (1968); Clay v. United States, 394 F.2d 281 (8th Cir. 1968), cert. denied, 393 U.S. 926, 89 S.Ct. 260, 21 L.Ed.2d 262 (1968). See, for close examples, Bailey v. United States, 389 F.2d 305 (D.C. Cir. 1967); United States v. LaVallee, 367 F.2d 351 (2nd Cir. 1966). See also, Sewell v. United States, 406 F.2d 1289 (8th Cir., 1969) (criminals do change license plates).[3]

■ Because probable cause for an arrest is determined by objective facts, it is immaterial that Kisecker, at the hearing on the motion to suppress, testified that he did not think that he had "enough facts" upon which to arrest Klingler for armed robbery. His subjective opinion is not material. See, Terry v. State of Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A constitutional safeguard predicated on an objective standard requires an even-handed application. From the standpoint of the individual, the figurative zone protecting his privacy and personal integrity may be encroached under the law only by facts and circumstances totaling probable cause for arrest. See, Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142 (1964); Johnson v. United States, 333 U.S. 10, 14, 17, 68 S.Ct. 367, 92 L.Ed. 436 (1948). From the standpoint of the government, application of the principle of probable cause must allow room for some mistakes by the arresting officer. As Mr. Justice Rutledge stated in Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949):

"These long-prevailing standards [of probable cause] seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would be to leave law-abiding citizens at the mercy of the officer's whim or caprice."

■ We agree that vagrancy was an unsuitable ground for the arrest.[4] We

---

3. Officer Nygaard also found a set of Minnesota license plates beneath the front seat of the Pontiac.

4. An arrest for vagrancy cannot be justified by a record as devoid of evidentiary support as in this case. See, e.g., Johnson v. Florida, 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968); Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (vagrancy arrests). See also, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L. Ed.2d 134 (1959); Pigg v. United States, 337 F.2d 302 (8th Cir. 1964). Under the Sioux Falls ordinance, *supra*, n. 1, "A vagrant is an idle person, having no legitimate means of support, who does not seek or desire lawful employment, and who subsists through charity of others or by unlawful means." Vagrancy is a condition or status not usually detectable by a single observation. Possession of property, including an automobile, and the expression of a desire for work evidences the antithesis of vagrancy. In our mobile society, a motorist who stops for a nap can hardly be considered a vagrant. Also of note is that no inquiry was made of the arrestees' financial status. Although the Sioux Falls ordinance, as well as an identical South Dakota statute, specifies that a vagrant may be one who lives "by unlawful means", probable cause to believe Klingler had committed a robbery and that he was thus

note, however, that the record in this case fails to show bad faith on the part of the officers in making the arrest for vagrancy. The testimony suggests that Officer Kisecker made what appears to be an honest mistake in specifying the reason for arrest. The circumstances do not give rise to the inference that the arrest was effected for the purpose of creating an excuse to search, which would make both the arrest and search illegal under the principles enunciated in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). In this case, Officer Kisecker was on the lookout for the robbery suspects and he directed Klingler's arrest with knowledge of a robbery that had recently been committed. Objectively, the facts known to Kisecker prior to the arrest and search met the standard of probable cause. Notwithstanding the officer's mistaken statement of grounds, the existence of probable cause for a robbery arrest prevents the vagrancy arrest from being considered pretextual.[5] See, Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L. Ed.2d 668 (1960); Barnett v. United States, 384 F.2d 848 (5th Cir. 1967); Brown v. United States, 125 U.S.App. D.C. 43, 365 F.2d 976 (1966); Feguer v. United States, 302 F.2d 214, 245–248 (8th Cir. 1962), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962); Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82 (1958), cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113, reh. denied, 358 U.S. 923, 79 S.Ct. 292, 3

L.Ed.2d 242 (1958). Cf. Wainright v. City of New Orleans, 392 U.S. 598, 599, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (1968). (Mr. Justice Fortas, in a concurring opinion, suggested that he would evaluate a search subsequent to an illegal vagrancy arrest by knowing "whether, in fact, there was constitutionally adequate cause for the police to suspect that the pedestrian [arrestee] was the man sought for murder".)

■ The validity of the arrest hinges on yet another question: Was the arrest invalid because the arresting officer notified Klingler that he was under arrest for vagrancy rather than for armed robbery?

The applicable South Dakota arrest statute requires that

"[w]hen arresting a person without a warrant, the officer must inform him of his authority and the cause of the arrest, except when he is in the actual commission of a public offense or is pursued immediately after an escape." S.D.C. § 34.1609 (Supp.1960)

No South Dakota authority guides us in the resolution of this precise issue.[6] Cases in this Court and in other jurisdictions on corresponding factual circumstances have held that an officer's statement of an unsuitable ground for arrest neither voids the arrest nor a search incidental thereto. For example, in McNeely v. United States, 353 F.2d 913 (8th Cir. 1965), the driver of an automobile was arrested for "littering" by an officer

---

5. In considering whether Klingler's arrest was pretextual, we, of course, are mindful of the rule that an unlawful arrest cannot be justified by fruits of an incidental search and seizure or by other after-acquired information. Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Pigg v. United States, 337 F.2d 302, 306 (8th Cir. 1964).

6. In another context, the South Dakota Supreme Court has stated that "no particular ritual" need be followed to comply with the statute and that circumstances, without express words, may suffice. Application of Kiser, 158 N.W.2d 596 (S.D. 1968).

living by unlawful means would not justify a warrantless arrest for vagrancy because that element of the misdemeanor offense had not been committed in the officer's presence as is required by the South Dakota Code. See, Bathke v. Myklebust, 69 S.D. 534, 12 N.W.2d 550 (S.D.1942); Culver v. Burnside, 46 S.D. 78, 190 N.W. 804 (S.D.1922).

For a capsulated history of vagrancy laws, see Hicks v. District of Columbia, 383 U.S. 252, esp. at 255, 257, 86 S.Ct. 798, 15 L.Ed.2d 744. For an excellent discussion and evaluation of vagrancy laws in the several states, see Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv.L.Rev. 1203 (1953).

who had not, in fact, seen the suspect throw anything from the vehicle. Judge Gibson, speaking for this Court, upheld the validity of the arrest. He observed:

> "The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law, following the heat of a chase, to always be able to immediately state with particularity the exact grounds on which he is exercising his authority. We believe that if the officer had probable cause to arrest and otherwise validly performed the arrest, he is not under the circumstances of this case required to immediately recognize and accurately broadcast the exact grounds for this action or suffer the arrest to come under constitutional criticism. Therefore, since Patrolman Walton had probable cause to believe the occupants of the car were engaged in felonious activity, the arrest of McNeely was valid regardless of the initially stated grounds for arrest." 353 F.2d at 918.

In United States v. Clemmons, 390 F.2d 407 (6th Cir. 1968), the Tennessee arresting officer, although having probable cause to believe the suspects had committed a felony, told them that they were arrested for "investigation". The arresting officer's failure to comply literally with a Tennessee arrest statute similar to that of South Dakota did not void the arrest; the offenders were "personally involved" and the arrest was "closely proximate to the offense in time". United States v. Clemmons, 390 F.2d at 409. See also, Commonwealth v. Lawton, 348 Mass. 129, 202 N.E.2d 824 (Mass.1964); Fuqua v. State, 246 Miss. 191, 145 So.2d 152 (Miss.1952).

In Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1962),

Mr. Justice Brennan noted the common law background for these arrest statutes:

> "The historic English requirement [is] that an arresting officer must give notice of his authority and purpose to one whom he is about to arrest. In the absence of such notice, unless the person being arrested already knew of the officer's authority and mission, he was justified in resisting by force, and might not be charged with an additional crime if injury to the officer resulted." Concurring opinion, 374 U.S. at 56, n. 10, 83 S.Ct. at 1641.

The evident purpose of giving notice of the authority and cause for arrest is to establish a procedure that is likely to result in a peaceable arrest. Here, of course, Klingler knew that he was dealing with the Sioux Falls police. The officer stated a cause of the arrest. Even though the stated ground proved to be a mistake, Klingler had notice that the officers purported to act under authority of the law. Under these circumstances, we believe the requirements of the South Dakota statute were satisfied and that the arrest was, therefore, legal.[7] The circumstances here are not such as to allow the criminal to go free "because the constable has blundered". (Quoting Judge Cardozo in People v. Defore, 242 N.Y. 13, 150 N.E. 585, 587.)

## THE SEARCH

■ Reasonableness is the ultimate constitutional test of a search or seizure. See, e. g., United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Haas v. United States, 344 F.2d 56, 58–60 (8th Cir. 1965). "The test of reasonableness cannot be stated in rigid

---

7. This Court has held arrest procedures valid under state law even though the grounds for arrest were not explicitly stated prior to search. See, e.g., Montgomery v. United States, supra and Recd v. United States, 401 F.2d 756 (8th Cir. 1968). Judge Matthes, speaking for the Court in *Reed*, said:

> "According to the evidence the formal declaration was made contemporaneous with or immediately after the shotgun was seized. 'An arrest to be effective does not require formal words of arrest or stationhouse bookkeeping.' United States v. Hensley, 374 F.2d 341, 348 (6th Cir.), cert. denied, 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed.2d 1373 (1967)." 401 F.2d at 761.

and absolute terms", Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399 (1947); Mulligan v. United States, *supra*, 358 F.2d 604, 607 (8th Cir. 1966), or determined by any fixed formula, but depends upon the facts and circumstances of each case. United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931); see also, Terry v. State of Ohio, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968).

■ In Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), the Supreme Court stated that "a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest". See also, James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965).

■ We hold that the seizure of Klingler's firearm was the result of a reasonable search incident to the lawful arrest. See, e. g., Moodyes v. United States, 400 F.2d 360 (8th Cir. 1968); Feinstein v. United States, 390 F.2d 50 (8th Cir. 1968), cert. denied, Jackson v. United States, 392 U.S. 943, 88 S.Ct. 2327, 20 L.Ed.2d 1405 (1968); Gullett v. United States, 387 F.2d 307 (8th Cir. 1967), cert. denied, 390 U.S. 1044, 88 S. Ct. 1645, 20 L.Ed.2d 307 (1968). The search of the automobile in which Klingler was a passenger and the discovery of the firearm therein occurred only moments after the arrest and while Klingler remained at the scene. The weapon was a proper object of seizure as an instrumentality of the crime of armed robbery. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, reh. denied, 331 U.S. 867, 67 S.Ct. 1527, 91 L.Ed. 1871 (1947); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, (1925); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Weeks v. United States, 232

U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). This search of a motor vehicle was not remote in time or distance from the arrest and the fruits thereof are not to be excluded under the principles enunciated in Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1966) and Dyke v. Taylor Implement Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed. 2d 538 (1968). See, e. g., Theriault v. United States, 401 F.2d 79, 81 (8th Cir. 1968), cert. denied, 393 U.S. 1100, 89 S. Ct. 1201, 22 L.Ed.2d 474 (1969); Moodyes v. United States, *supra*; Mulligan v. United States, 358 F.2d 604, 605 (8th Cir. 1966); Drummond v. United States, 350 F.2d 983 (8th Cir. 1965), cert. denied, Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966).

## II. THE MIRANDA ISSUE

■ On the day of Klingler's arrest, he was interviewed at the Minnehaha County Jail in Sioux Falls by Special Investigator John Cronin of the Alcohol and Tobacco Tax Division of the Treasury Department. Prior to this in-custody interrogation, Cronin identified himself and read to Klingler a standard Treasury Department Miranda warning and waiver of right to counsel form as follows:

"Before we ask you any questions, it is my duty to advise you of your rights. You have the right to remain silent. Anything you say can be used against you in court, or other proceedings. You have the right to consult an attorney before making any statement or answering any question, and you may have him present with you during questioning. You may have an attorney appointed by the United States Commissioner or the court to represent you if you cannot afford or otherwise obtain one. If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer. However, you may waive the right to advice of counsel and your right to remain silent, and you may

answer questions or make a statement without consulting a lawyer if you so desire."

In reply to Cronin's question, Klingler stated that he understood his rights. Cronin then reiterated in his own words for Klingler's benefit the contents of the form:

"[I]t means you don't have to talk to me if you don't want to, and if you do decide to talk to me, that you can stop the questioning anytime. It means that you have the right to have an attorney present with you at this time; and it means that if you do say anything, that it can be used against you later; and *that you do have the right to have an attorney appointed by the Court for you if you are later charged with a Federal offense.*" (Emphasis supplied.)

Cronin deviated from the standard printed warning by notifying the prisoner that the right to secure appointed counsel was not immediate, but would await the bringing of a federal charge.

Klingler again answered that he understood his rights. He read the printed form, but refused to sign it on the ground that he didn't "sign anything without a lawyer".

Klingler then stated to Cronin that he owned the .22 caliber pistol found in the automobile search, that he had purchased it in Salt Lake City, and that he had previously been convicted of interstate transportation of a stolen motor vehicle and of obtaining property under false pretenses. Klingler refused to answer Cronin's question as to who kept the firearm while Klingler was in prison for the obtaining property under false pretenses conviction and as to when he arrived in Sioux Falls. Klingler then stated that "he didn't want to talk any more" and the interview was terminated.

It is Klingler's contention that Agent Cronin deprived him of his Fifth, Sixth and Fourteenth Amendment rights as enunciated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), and that his inculpatory admissions during the custodial interrogation were erroneously admitted into evidence. A similar contention was made and rejected in Mayzak v. United States, 402 F.2d 152 (5th Cir. 1968). The opinion, with which we agree, stated in part:

"* * * The fact that the F.B.I. agent truthfully informed Mayzak that the F.B.I. could not furnish a lawyer until federal charges were proferred against him does not vitiate the sufficiency of an otherwise adequate warning. * * * *Miranda* * * * does not require that attorneys be producible on call, or that a Miranda warning include a time table for an attorney's arrival. * * * To so hold would be to allow a defendant to use his right to an attorney as a weapon against his custodians. He would simply argue if you will not furnish me an attorney now, even though I am told that I can remain silent, I will talk and after talking object to my words going into evidence. This argument is both hollow and specious. * * *"

 In this case, Klingler was advised both orally and in writing of his constitutional rights. He stated that he understood his rights and he selectively answered Cronin's questions. Klingler's refusal to sign the written waiver form without the presence of counsel is not fatal; Miranda does not require a written waiver, but only a waiver made "voluntarily, knowingly and intelligently". Miranda v. State of Arizona, *supra*, 384 U.S. at 444, 86 S.Ct. 1602. We believe that Klingler "voluntarily, knowingly and intelligently" waived his right to counsel with regard to the admissions in question. That Klingler chose of his own free will to speak without the assistance of counsel should give him no cause for complaint.

Affirmed.