Elliott Charles RICEHILL, Petitioner-Appellant,

v.

Lou V. BREWER, Warden, Iowa State Penitentiary, Respondent-Appellee.

No. 71-1547.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1972.

Decided May 2, 1972.

Paul H. Kinion, Cedar Rapids, Iowa, for appellant.

Richard N. Winders, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from the district court's denial of Elliott Charles Ricehill's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The facts upon which Ricehill bases his petition are contained in State v. Ricehill, 178 N.W.2d 288 (Iowa 1970), cert. denied, 401 U.S. 942, 91 S.Ct. 945, 28 L.Ed.2d 222 (1971). In his habeas petition, Ricehill contended that his conviction by a jury in Linn County, Iowa District Court of the murder of Mabel Bigley

was based upon evidence obtained from him incident to an invalid arrest. He claimed that this arrest (for vagrancy) was a mere subterfuge in order to detain him and to obtain evidence against him on the murder charge. The federal district court agreed that probable cause for Ricehill's arrest for vagrancy did not exist but disagreed that his vagrancy arrest was a mere subterfuge and sham. The district court then justified the search and attendant seizure on the basis that probable cause for his murder arrest did exist at the time he was arrested for vagrancy. Upon this appeal, Ricehill asserts that (a) his arrest for vagrancy was a mere subterfuge and sham; (b) probable cause did not exist for his arrest for murder; and (c) even assuming its existence, evidence obtained as a result of a subterfuge and sham cannot be used as evidence. For reasons stated below, we affirm the district court's decision, 338 F.Supp. 1311.

## I.

The trial court properly determined that there was not probable cause for the arrest of Ricehill on the vagrancy charge. This decision was made partially on the basis that vagrancy is not an indictable crime in Iowa and that therefore "a lawful arrest for vagrancy in Iowa requires more than the minimum federal standard, 'probable cause,' and 'reasonable belief,' but also that vagrancy be *in fact* committed." Clearly, Ricehill was not a vagrant as defined by Iowa statute; and, even if he had come within that definition, there is a serious question as to whether or not that vagrancy statute is constitutional under the recent Supreme Court decision of Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).[1]

It does not necessarily follow, however, that Ricehill's arrest for vagrancy was a sham or a mere pretext. Detective Schultz testified that Ricehill was "booked" for vagrancy

"[b]ecause he told me he lived at 118 First Street, N.E.; and in talking with Linda Beltram, she said he did not live with her. He also gave an address of 803 Third Street, S.W., Mr. Henry. Capt. Longerbeam had checked there and said that Elliott had moved out approximately a month previous to that."

Detective Schultz further testified that "[w]e held Mr. Ricehill because he was a vagrant. . . ." Although the police were mistaken concerning their right to hold Ricehill on the vagrancy charge, it cannot be said from the facts in this record that the police used the vagrancy charge as a sham or a pretext to further their quest for evidence relating to the murder.

This case is similar in this respect to Klingler v. United States, 409 F.2d 299, 304–305 (8th Cir.), cert. denied, 396 U. S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969), in which this Court stated as follows:

"We agree that vagrancy was an unsuitable ground for the arrest. We note, however, that the record in this case fails to show bad faith on the part of the officers in making the arrest for vagrancy. The testimony suggests that Officer Kisecker made what appears to be an honest mistake in specifying the reason for arrest. The circumstances do not give rise to the inference that the arrest was effected for the purpose of creating an excuse to search, which would make both the arrest and search illegal under the principles enunciated in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). In this case, Officer Kisecker was on the lookout for the robbery suspects and he directed Klingler's arrest with knowledge of a robbery that had re-

1. The Iowa vagrancy statute reads, in pertinent part, as follows:
"The following persons are vagrants:
3. All persons wandering about and lodging in barns, outbuildings, tents, wagons, or other vehicles, and having no visible calling or business to maintain themselves." Iowa Code Ann. § 746.1 (1959).

cently been committed. Objectively, the facts known to Kisecker prior to the arrest and search met the standard of probable cause. *Notwithstanding the officer's mistaken statement of grounds, the existence of probable cause for a robbery arrest prevents the vagrancy arrest from being considered pretextual.*" (Footnotes omitted.) (Emphasis supplied.)

## II.

■ We agree with the district court that, at the time of Ricehill's arrest for vagrancy, probable cause existed for his arrest for murder. We recognize that Detective Schultz testified that Ricehill was not arrested for murder because "[h]e was not a suspect. . . ." However, we find it difficult to lend much weight to such testimony when, shortly after Ricehill was booked, Chief of Police Matias told Senior Identification Officer McDermott "to go up in the cell area and pick up Elliott Ricehill and bring him to the identification bureau, remove his clothing, scrape his fingernails, take photos of his body if there was any evidence present." Thereupon, Officer McDermott took pictures of Ricehill's body, removed his clothing, and "scraped his fingernails . . . from each hand and put [the scrapings] in two separate containers, sealed them for evidence and identified them." Certainly, such thorough procedures are not standard for a vagrancy arrest. As this Court indicated in Klingler v. United States, *supra*, 409 F.2d at 304, Detective Schultz's "subjective opinion is not material." "[P]robable cause for an arrest is determined by objective facts . . . ". In this case, the objective facts known to the police when they arrested Ricehill for vagrancy can be quickly summarized. Mabel Bigley had been beaten to death. Her apartment was torn up with blood on the floor. Ricehill knew Mabel Bigley and had been in her apartment that day. He had blood on his clothing, scratches on his hands, and a broken wristwatch with blood on it. And finally, Ricehill had failed to report the murder for several hours after he admittedly knew Mrs. Bigley was either dead or seriously injured. From these facts, we believe that the police had probable cause to arrest Ricehill for the murder of Mabel Bigley.

The fact that there was probable cause for an arrest on a charge of murder, validates and makes reasonable the search and attendant seizure ostensibly incident to the arrest for vagrancy. *See* United States v. Whitney, 425 F.2d 169, at 170 (8th Cir.), cert. denied, 399 U.S. 935, 90 S.Ct. 2267, 26 L.Ed.2d 808 (1970); United States v. Bonds, 422 F.2d 660, 664 (8th Cir. 1970); Klingler v. United States, *supra,* 409 F.2d at 304; and McNeely v. United States, 353 F.2d 913, 918 (8th Cir. 1965).

■ The search, however, was valid not only as incident to the arrest but for the additional reason that there was probable cause for the search that was made. This Court in Thunder Horse v. State, 456 F.2d 1262 (8th Cir. March 17, 1972), aff'g State ex rel. Thunder Horse v. Erickson, 328 F.Supp. 1149 (D.S.D. 1971) recently said:

"The validity of the search in this case [where an individual was wrongfully arrested for vagrancy but could have been lawfully arrested for robbery] does not turn upon whether the arresting officer stated the proper grounds for the arrest; instead, it turns upon whether the police had probable cause to believe that the automobile contained the fruits of the robbery."

Similarly, the validity of the search and attendant seizure in this case does not necessarily turn upon whether Detective Schultz stated the proper grounds for Ricehill's arrest but rather whether the police had probable cause to believe that Ricehill's clothing, body and personal effects contained evidence of the murder. The known facts prior to the search can also be quickly summarized. Mabel Bigley's body and "torn-up" apartment would indicate that she struggled with whoever killed her. Ricehill's clothing,

hands, and wristwatch had what appeared to be blood on them. His wrists had fresh scratches on them; and his wristwatch was broken. We think that these facts, together with those already discussed, furnished the police with probable cause to believe Ricehill's clothing, body and personal effects contained evidence of the murder.

## III.

 The evidence obtained as a result of the asserted "illegal" search after Ricehill was booked was (1) slides and pictures taken of Ricehill showing scratches and blood on his hands and body; (2) his clothing with blood on them; (3) his fingernail scrapings; (4) hair obtained from his clothing; and (5) testimony that the blood and hair on the clothing was similar to that of Mabel Bigley. The broken wristwatch with blood on it was not taken during the "search" but at the time Ricehill was booked. As to these six items, Ricehill preserved his right to object only as to the introduction of the watch. As to the other items, his attorney at the trial specifically stated that he had no objection to their introduction. In addition to being the product of a search incident to valid arrest, the admission of the watch had only cumulative effect. Detective Schultz testified that, while in the interrogation room prior to booking, he noticed Ricehill's wristwatch which had "the broken crystal and Lucern brand name [and] [t]he appearance of blood on it on the back." Detective Schultz also testified that he noticed the watch during booking, prior to the search, and that "the crystal was broken. It had a piece—it looked like the piece was out of it. Around 5 o'clock or between 5 and 6 o'clock on the watch, and it had caked blood on it." After receiving this testimony, the most that could possibly be said as to the actual introduction of the watch, is that it was cumulative and that its reception was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969);

Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Kaufman v. United States, 453 F.2d 798, 803–804 (8th Cir. 1971).

For the reasons set forth above, the judgment is affirmed.

HEANEY, Circuit Judge (concurring).

I concur in the result. I do so, however, only because the photographs and the evidence from the fingernail scrapings and hair samples were not objected to. Once these had been admitted, I agree with the majority that admission of the watch was merely cumulative and nonprejudicial.