**UNITED STATES of America, Appellee,**

v.

**Gerald LESTER, a/k/a Jerry Stretches, Appellant.**

**No. 80–2129.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1981.

Decided May 14, 1981.

---

Ralph A. Vinje, Bismarck, N. D., for appellant.

James R. Britton, U. S. Atty., James S. Hill, Asst. U. S. Atty., Bismarck, N. D., for appellee.

Before LAY, Chief Judge, ROSS, Circuit Judge, and ROBINSON, District Judge.[*]

ROSS, Circuit Judge.

Gerald Lester was convicted of voluntary manslaughter in the beating death of Owen Wise Spirit.[1] On appeal he claims that the district court[2] erred in denying his motion to suppress certain articles of clothing allegedly seized by a tribal jail officer in violation of his right to be free from unreasonable searches and seizures. We affirm.

On July 6, 1980, officers of the Bureau of Indian Affairs at Fort Yates, North Dakota were informed of the possible beating death of Owen Wise Spirit. Wise Spirit was an American Indian residing in Cannonball, North Dakota, which is located within the boundaries of the Standing Rock Sioux Indian Reservation.

Two individuals, Samuel Lester and Alvin Spotted Elk, were initially named as suspects. Samuel Lester was arrested by tribal officers on an outstanding disturbing the peace warrant. He then accompanied the tribal officers as they investigated the beating incident.

The officers discovered Wise Spirit's body in a ditch, bleeding and unconscious from the beating, but alive.[3] His blood covered the surrounding ground and an adjacent parked car.

Helene Joshua and Bella Feather informed the officers that a large group, including Gerald and Samuel Lester, Jerry Joshua, Owen Wise Spirit, Alvin Spotted Elk and Gary Little Bird had been drinking together the previous evening. The tribal officers relayed this message to Fort Yates and were advised to bring in all suspects for questioning. Both Feather and Joshua claimed to have observed blood on the pants and boots of Gerald Lester earlier that morning. They indicated their belief that Gerald Lester and Jerry Joshua were still drinking at the home of Matilda Two Bears. The officers proceeded to the Matilda Two

---

[*] The Honorable Richard E. Robinson, Senior United States District Judge for the District of Nebraska, sitting by designation.

[1] He was sentenced to a maximum penalty of 10 years imprisonment.

[2] The Honorable Ronald N. Davies, Senior United States District Judge for the District of North Dakota.

[3] Wise Spirit died in an ambulance en route to a Bismarck, North Dakota hospital.

Bears home, and there placed Jerry Joshua and Gerald Lester under custody. The arresting officers observed blood on Gerald Lester's pants. The officers believed, however, that Gerald Lester appeared intoxicated. He was therefore placed in custody for detoxification.[4]

At the Fort Yates jail, Gerald Lester was processed, searched, and placed in a cell. Approximately one-half to three-quarters of an hour after being placed in his cell, Gerald Lester's clothing was taken, and he was issued coveralls. Officer William Haliburton, the mailer-dispatcher of the Fort Yates Bureau of Indian Affairs, testified that this was the routine procedure when a prisoner was expected to be retained in jail for more than eight hours. Gerald Lester testified that he had been jailed four or five times for detoxification, but did not recall having his clothes taken from him previously.

Officer Haliburton, at the time of the seizure, observed blood on Gerald Lester's clothing and boots. Additionally, Haliburton noticed hair on Lester's boots. He marked and stored Lester's clothes, later transferring them to the FBI for its investigation of the murder.

Gerald Lester moved to suppress the evidence obtained as a result of the allegedly illegal search and seizure of his clothing. Following the hearing, the trial court denied Lester's motion for the suppression of the clothing and boots taken from him July 6, 1980. The trial court ruled that Lester would have been held as a suspect in the beating of Owen Wise Spirit irrespective of tribal charges, so that the taking of the clothing was proper. Gerald Lester appeals the district court's denial of his motion to suppress these articles of clothing.

This case does not technically arise under the fourth amendment, as the Bill of Rights is not applicable to Indians on Indian land. *Groundhog v. Keeler*, 442 F.2d 674, 681 (10th Cir. 1971). Since the jailer who seized the clothing was a tribal officer, the seizure falls under the Indian Civil Rights Act of 1968. 25 U.S.C. § 1302(2).

The language of the Indian Civil Rights Act parallels the fourth amendment guarantee to "the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.Const. Amend. IV. It provides in relevant part that "[n]o Indian tribe in exercising powers of self-government shall * . * * violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures." 25 U.S.C. § 1302(2). The Act purports to give "Indians constitutional rights which other Americans enjoy." *White Eagle v. One Feather*, 478 F.2d 1311, 1313 (8th Cir. 1973), *quoting* 114 Cong.Rec. 5836 (1968). In light of the legislative history of the Indian Civil Rights Act and its striking similarity to the language of the Constitution, *see Loncassion v. Leekity*, 334 F.Supp. 370, 374 (D.N.M.1971), we consider the problem before us under fourth amendment standards.

All searches without a valid warrant are unreasonable under the fourth amendment unless shown to be within one of the established exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031, 29 L.Ed.2d 564 (1971). Appellant contends that the search and seizure of his clothing preceded his arrest for the murder with which he was charged and thus was not incident to the actual arrest.[5]

---

4. Gerald Lester was initially lodged pursuant to the detoxification statutes of the Standing Rock Sioux Tribal Code of Justice. The detoxification statute, chapter XVI, Community Health, § 16.3 of the Tribal Code, pertains to treatment and medical services. Detention for detoxification is not classified as a criminal offense under the Tribal Code, nor is it strictly considered a civil offense. For the purpose of his argument,

appellant classifies his detention for detoxification as a civil offense under the Tribal Code.

5. Gerald Lester was arrested on July 6, 1980, and held in custody for detoxification. Two days later, while still in custody for detoxification, Lester was formally charged with the murder of Owen Wise Spirit.

The record establishes that, at the time of appellant's arrest,[6] the arresting officers possessed sufficient information to make an arrest for assault but stated the ground for the arrest as detoxification. The validity of the subsequent search in this case, however, does not turn upon the suitability of the stated grounds for the arrest. Rather, it turns on whether the officers had probable cause to believe that Lester's clothing contained evidence of the murder. *Ricehill v. Brewer*, 459 F.2d 537, 538–39 (8th Cir. 1972); *Thunder Horse v. State*, 456 F.2d 1262, 1263 (8th Cir. 1972). (In both of these cases the defendant had initially been arrested for vagrancy.) In other words, the validity of the arrest should be judged by whether the arresting officers actually had probable cause for the arrest, rather than by whether the officers gave the arrested person the right reason for the arrest.[7]

Probable cause to arrest appellant arose when the officers observed the blood and hair on Lester's pants and boots, having recently been informed of his possible participation in the assault upon Owen Wise Spirit. In essence, appellant's bloodstained clothing was within the plain view of the arresting officers.

It is well established that evidence falling within the plain view of an officer properly in a position to perceive the view is subject to seizure and admissible as evidence. *United States v. Johnson*, 541 F.2d 1311, 1316 (8th Cir. 1976). Evidence is within the plain view rule where the initial intrusion resulting in the "plain view" is lawful, discovery of the evidence is "inadvertent," and the incriminating nature of the evidence is "immediately apparent." *Coolidge v. New Hampshire, supra*, 403 U.S. at 466, 91 S.Ct. at 2038.

These requirements were clearly satisfied in the present case. The initial entry preceding the arrest falls within the consent exception to the search warrant requirement.[8] Discovery of the blood on appellant's clothing, which was obvious and open, was inadvertent. And the incriminating nature of the bloodstains on the clothing of one suspected of committing an assault was obvious.

These circumstances do not give rise to the inference that the arrest was effected for the purpose of creating an excuse to search. Nor can it be inferred that the officers used the detoxification charge as a pretext to further their quest for evi-

---

**6.** It is clear that, at the time Gerald Lester was lodged for detoxification, his liberty of movement was significantly restricted, rendering the arrest for the purposes of this case, complete. Cf. *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959). Indeed, the arresting officer testified that he considered Gerald Lester a suspect in the assault of Owen Wise Spirit and that he would have transported Lester by force had he refused to accompany the officer to the Fort Yates jail.

**7.** A search may be upheld even where there has been no formal arrest, provided there exists probable cause for the search, the intrusion is limited and incident to stationhouse detention under circumstances which might apprise the defendant of his suspected role in the crime, and the evidence is readily destructible. *Cupp v. Murphy*, 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973). The seizure of appellant's clothing in the instant case was pursuant to standard practice at the Fort Yates jail. *United States v. Edwards*, 415 U.S. 800, 804, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771 (1974). Probable cause for the search existed upon the officers' observations of blood on appellant's

clothing. Moreover, the facts of this case suggest that appellant was aware that he was considered a suspect in the Wise Spirit incident. Finally, the evidence in this case, as in *Cupp* was readily destructible. Appellant was placed in a cell equipped with a wash basin, toilet and a shower. Appellant could have used these plumbing facilities to destroy the evidence seized by washing the bloodstains from his pants and boots.

Thus, even if the arrest for detoxification were somehow considered defective, under the rationale of *Ricehill v. Brewer*, 459 F.2d 537, 538–39 (8th Cir. 1972); *Thunder Horse v. State*, 456 F.2d 1262, 1263 (8th Cir. 1972); and *Klingler v. United States*, 409 F.2d 299, 304–05 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); we would nonetheless conclude that, under these circumstances, the search was reasonable and the evidence admissible.

**8.** Appellant makes no claim that Matilda Two Bears refused to consent to the entry of her house by the arresting officers.

dence relating to the murder. *Klingler v. United States*, 409 F.2d 299, 304–05 (8th Cir.), *cert. denied*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969) (vagrancy arrest). Rather, it appears that the seizure of the evidence in this case, already in plain view of the arresting and custodial officers, was merely a normal incident to a custodial arrest.

"[I]n the case of a lawful custodial arrest a full search of the person is * * * an exception to the warrant requirement of the Fourth Amendment," and "a 'reasonable' search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). In *Robinson* the court held admissible heroin concealed inside a cigarette package found in defendant's pocket, even though the package had been opened and examined without a warrant. The Court noted:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search.

*Id.*

■ Moreover, a search of arrestee's person incident to a lawful arrest does not violate the fourth amendment even if a substantial period of time has elapsed between the arrest and subsequent taking of property. *United States v. Edwards*, 415 U.S. 800, 807, 94 S.Ct. 1234, 1239, 39 L.Ed.2d 771 (1974). In *Edwards* the Supreme Court approved a stationhouse evidentiary search and seizure of articles of clothing worn by the defendant at the time of his arrest. The Court held that for a reasonable time (over ten hours in *Edwards*) and to a reasonable extent the effects in the possession of an accused at the time of arrest which were then subject to search and seizure could lawfully be searched and seized without a warrant at the stationhouse. In so holding, the Court noted:

> [O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

*Id.*

Finally, the Court stated that:

> While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.

*Id.* at 808–09, 94 S.Ct. at 1239–1240, *quoting United States v. DeLeo*, 422 F.2d 487, 493 (1st Cir. 1970) (footnote omitted).

As in *Edwards*, the search and attendant seizure of appellant's clothing, prime evidence in the case, took place at the jail shortly after the arrest. No more than 30 to 45 minutes elapsed from the time of Lester's incarceration until his clothing was taken in exchange for prison coveralls. And although controverted, there was testimony that it was the routine procedure at the Fort Yates jail to take the clothing of any person to be held in custody more than eight hours, as was the standard practice noted in *Edwards*. *Id.* at 804, 94 S.Ct. at 1237.

■ The search in this instance was clearly within the parameters of *Robinson* and *Edwards*. Accordingly, we hold that the search and attendant seizure of appellant's clothing was valid and reasonable under the circumstances, and the evidence seized therefrom admissible even though it was unrelated to the rationale for which Lester was initially arrested.

Finally, contrary to appellant's contentions, the evidence was not rendered inadmissible as a result of the transfer of the clothing from the tribal officers to FBI agents. Evidence legally obtained by one police agency may be made available to other such agencies without a warrant, even for a use different from that for which it was originally taken. *Gullett v. United States*, 387 F.2d 307, 308 n.1 (8th Cir. 1967), *cert. denied*, 390 U.S. 1044, 88 S.Ct. 1645, 20 L.Ed.2d 307 (1968).

For the reasons set forth above, we conclude that the district court properly denied appellant's motion to suppress.

Affirmed.