Charles PATTERSON, Jr.

v.

**BOARD OF PROBATION AND PAROLE OF the COMMONWEALTH OF PENNSYLVANIA, et al.**

**Civ. A. No. 93–2585.**

United States District Court,
E.D. Pennsylvania.

May 9, 1994.

3. Plaintiffs similarly had no expert testimony which would have supported the malfunction theory.

Ronald G. McNeil, Philadelphia, PA, for plaintiff.

Brian K. Wiley, Office of Atty. Gen. and Ronald G. McNeil, Philadelphia, PA, for defendants.

## SUMMARY MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

I have considered defendants' Motion for Summary Judgment, defendants' Supplement to their Motion for Summary Judgment (Supplement), and plaintiff's response, and I will GRANT the Motion in part, and DENY it in part. In doing so I reach the following legal conclusions:

a. After the Supreme Court's decision in *Albright v. Oliver,* — U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), plaintiffs may sue law enforcement officers under federal civil rights laws only for pre-trial activities which constitute an initial seizure of their person. The Court has explicitly rejected constitutional liability under the Fourteenth Amendment for malicious prosecution or other prosecution related activities. Therefore, in an action formerly characterized as malicious prosecution, liability of law enforcement officers is limited to violations of the Fourth Amendment prohibition against unreasonable seizures, including arrests without probable cause.

■ b. When state law authorizes a warrantless search of a parolee's residence by a parole officer, such a search is permissible under federal constitutional law. The Pennsylvania Supreme Court has recently held that absent state regulations authorizing warrantless searches by parole officers such searches are unconstitutional. Pennsylvania does not have regulations authorizing such searches. However, at the time of the search at issue in this case, the Third Circuit, relying on Pennsylvania state law, explicitly upheld warrantless searches by parole officers. Therefore, because the law forbidding such searches was not "clearly established" at the time of the incident, the officer in this case is entitled to qualified immunity.

I have arrived at these rulings for the following reasons:

1. Plaintiff was a convicted felon, serving a term for armed robbery, who was granted parole by the Pennsylvania Board of Probation and Parole (PBPP) on January 14, 1992. Exhibit C of Summary Judgment Motion.

Prior to being granted parole and being released, the plaintiff signed an agreement that as a condition of release the PBPP could search his personal property and residence without a warrant. Exhibits A, B, E of Defendants' Motion for Summary Judgment. Plaintiff further agreed to full participation in anti-drug therapy and to refrain from assaultive behavior. *Id.*

2. Plaintiff was issued a warning in April of 1992 because of inadequate compliance with his drug treatment responsibilities. Exhibit B of Supplement.

3. Plaintiff was sent a letter on October 9, 1992 from individual defendant McGuire regarding plaintiff's failure to attend a meeting with his parole officer scheduled for October 7, 1992. Exhibit D of Supplement. The letter also informed plaintiff of his obligation to attend an October 19, 1992, or be deemed in violation. *Id.* Plaintiff attended that meeting. *Id.*

4. On October 23, 1992, defendant McGuire went by himself to plaintiff's residence. Exhibit B of Motion for Summary Judgment. He was admitted to the residence by plaintiff's father. *Id.* After being admitted, McGuire went upstairs to plaintiff's bedroom. *Id.* According to McGuire, plaintiff was hostile to him. *Id.* According to McGuire, as he attempted to leave plaintiff shoved him against the wall, and then pushed him down the stairs. *Id.* According to plaintiff, he politely asked McGuire to go down the stairs while he got dressed, and he never touched the defendant. *See Com. v. Patterson*, M.C. # 93–01–0613 (November 4, 1993) at 46 (Exhibit Attached to Plaintiff's Response to Summary Judgment).

5. Defendant returned to plaintiff's residence with police officers and arrested the plaintiff. Exhibit B of Motion for Summary Judgment. Defendant filed criminal charges against plaintiff for aggravated assault, simple assault, reckless endangerment, and resisting arrest. Exhibit H of Motion for Summary Judgment. A parole revocation hearing was also ordered based on defendant McGuire's evaluation. Exhibit B of Motion for Summary Judgment.

6. Plaintiff was detained at Grateford Prison, and his parole revocation hearing was postponed pending disposition of the criminal charges. Exhibit J of Supplement.

7. On March 4, 1993, the Aggravated Assault charge was dismissed in Common Pleas Court, and the remaining charges were remanded to Municipal Court. Plaintiff's Complaint.

8. On March 31, 1993, the remaining charges were dismissed by the Honorable Felice R. Stack. Plaintiff's Complaint.

9. On April 9, 1993, Plaintiff was released from Grateford Prison. Plaintiff's Complaint.

10. Plaintiff brought this action in May of 1993 under 42 U.S.C. § 1983 for unreasonable search, false arrest, false testimony, and malicious prosecution, 42 U.S.C. § 1981 and various common law causes of action against the Board of Probation and Parole for the Commonwealth of Pennsylvania (the "Board") and his parole agent, Ed McGuire. As to all counts, plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. Defendants move for summary judgment as to all claims.

11. After the commencement of this lawsuit, plaintiff was re-arrested and recharged on the basis of Defendant McGuire's allegations of assault. Plaintiff was acquitted on all charges. *See Com. v. Patterson*, M.C. # 93–01–0613 (November 4, 1993) at 46.

12. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendants are entitled to summary judgment only if no reasonable resolution of the conflicting evidence and the inference which could be drawn from that evidence could result in a judgment for the plaintiff. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is a dispute or disagreement over what inferences reasonably could be drawn from the facts, even if those facts are undisputed, it is improper to grant

summary judgment. *See Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d Cir.1991). However, "the mere existence of a scintilla of evidence in support of plaintiffs['] position will be insufficient[;] there must be evidence on which the jury could reasonably find for the plaintiff[s]." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

The party moving for summary judgment must demonstrate that, under the undisputed facts, the non-movant has failed to introduce evidence supporting necessary elements of his case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the movant has demonstrated such a failure, the burden then shifts to the non-movant to identify which portions of the records support the allegedly unsupported elements. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ 13. Plaintiff's claims under 42 U.S.C. §§ 1983 and 1981 for damages against the Board and McGuire in his official capacity are barred by the Eleventh Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (state is not a "person" liable under § 1983); (Eleventh Amendment bars § 1981 damage actions in federal court against states and their officers).

■ 14. The Eleventh Amendment does not bar suits for injunctive relief under 42 U.S.C. §§ 1983 and 1981 when brought against an appropriate state official in his official capacity. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Plaintiff alleges that he is entitled to injunctive relief, but has not described the relief he is seeking. Summary judgment will be denied as to Plaintiff's claims for injunctive relief against the Board, and Plaintiff will have 10 days from the date of this order to submit a detailed description of the injunctive relief he is seeking against Parole Agent McGuire.

■ 15. Parole and probation officials are entitled to quasi-judicial immunity when engaged in adjudicatory activities, but are only entitled to qualified immunity for their other actions. *Thompson v. Burke,* 556 F.2d 231, 236–38 (3d Cir.1977). Plaintiff alleges that McGuire violated his rights by: a)

searching his residence without a warrant, b) falsely arresting him and initiating unfounded parole revocation proceedings against him, c) filing false criminal charges against him and d) testifying falsely against him. McGuire is not entitled to absolute immunity as to plaintiff's claims that he illegally searched plaintiff's residence, falsely arrested and initiated unfounded parole revocation proceedings against him, and filed false criminal charges against him, since investigative activities and the initiation of parole revocation proceedings or criminal charges are not part of a parole officer's quasi-judicial duties. *See Shea v. Smith,* 966 F.2d 127 (3d Cir. 1992); *Wilson v. Rackmill,* 878 F.2d 772, 776 (3d Cir.1989); *Harper v. Jeffries,* 808 F.2d 281, 284 (3d Cir.1986); *Thompson,* 556 F.2d at 237–38.

■ 16. Witnesses in a criminal prosecution are absolutely immune from damages under 42 U.S.C. § 1983. *Taylor v. Robinson,* 703 F.Supp. 392 (E.D.Pa.1989); *McArdle v. Tronetti,* 961 F.2d 1083 (3d Cir.1992). Therefore, summary judgment is granted as to plaintiff's claim that McGuire violated his constitutional rights by testifying falsely at plaintiff's criminal trial.

17. To determine whether McGuire is entitled to qualified immunity, I must first address the merits of the underlying constitutional claims, and then determine whether the right alleged to have been violated was "clearly established." *See Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by the plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.")

■ 18. I find that Parole Agent McGuire did not violate Patterson's Fourth Amendment rights when he searched Patterson's residence without a warrant because Patterson had consented to such a search as a condition of his parole. A search is valid in the absence of warrant or probable cause if a person with a protected privacy interest in the premises voluntarily consents to the

search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Patterson does not deny that he voluntarily signed the parole conditions document.

19. Even if plaintiff's consent were invalid, I find that the defendant is not liable for the search of plaintiff's residence. In *Griffin v. Wisconsin*, the Supreme Court included warrantless searches by probation officers among the exceptions to the Fourth Amendment prohibition against searches and seizures without warrants based on probable cause because the probation system involves "special needs, beyond the normal need for law enforcement, [which] make the warrant and probable cause requirement impracticable". *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 875, 107 S.Ct. 3164, 3168–69, 3169, 97 L.Ed.2d 709 [1] (1987); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 747–48, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring in the judgment) (authorizing searches of student property without warrant or probable cause); *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735–36, 18 L.Ed.2d 930 (1967); *New York v. Burger*, 482 U.S. 691, 702–03, 107 S.Ct. 2636, 2643–44, 96 L.Ed.2d 601 (1987).

The Court held that the search at issue in *Griffin* was valid because it was conducted in accordance with a valid regulation. The *Griffin* Court declined to address whether a search of a probationer's home is valid when there are "reasonable grounds" to believe there is contraband present, but in the absence of a valid regulation permitting such searches. *Griffin*, 483 U.S. at 880, 107 S.Ct. at 3172.

The Court held that courts must look to state law to determine whether the search in question complied with state regulations. *Griffin*, 483 U.S. at 875, 107 S.Ct. at 3169. Federal courts have upheld searches by Pennsylvania parole officers of their clients' homes upon only reasonable suspicion that they will find evidence of parole violations, despite the absence of a regulatory structure like that in *Griffin*, because Pennsylvania case law had permitted such searches. *See United States v. Hill*, 967 F.2d 902 (3d Cir. 1992); *Shea v. Smith*, 966 F.2d 127 (3d Cir. 1992); *Bey v. Hines*, 1993 WL 5494 (E.D.Pa.); *Torres v. Daly*, 1993 WL 349382 (E.D.Pa.1993); *Jarvis El v. Pandolfo*, 701 F.Supp. 98 (E.D.Pa.1988).

The Pennsylvania Supreme Court recently held that, in the absence of a regulatory structure like that in *Griffin*, searches of parolees homes based upon less than probable cause are unconstitutional. *Com. v. Pickron*, 634 A.2d 1093 (Pa.1993). Accordingly, plaintiff has stated a constitutional claim for an improper search.

20. Because the Supreme Court in *Griffin* declined to address the constitutionality of warrantless searches of parolees' homes in the absence of a regulatory framework, and because courts of this Circuit had allowed such searches based upon Pennsylvania judicial authorization of such searches, McGuire had no reason to know, in October of 1992, that the search was unconstitutional. Therefore, while the search was unconstitutional, Officer McGuire is entitled to qualified immunity because the contours of the constitutional right which he is alleged to have violated was not "clearly established" at the time of the action. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

21. Plaintiff's third count of his complaint alleges that "by means of their unlawful detention of Plaintiff and the malicious charges placed against Plaintiff, Defendants deprived Plaintiff of his liberty without due process of law in violation of the U.S. and Pennsylvania Constitutions and 42 U.S.C. § 1983." In the Third Circuit, false arrest and malicious prosecution have been treated as separate constitutional torts; plaintiffs have been able to prevail under 42 U.S.C. § 1983 by proving the elements of a state malicious prosecution tort as a violation of the plaintiff's substantive due process rights arising out of the Fourteenth Amendment, while a false arrest charge stated a claim under either the

---

1. The same reasoning applies to Patterson, though he was a parolee rather than a probationer. There is no constitutional distinction between the status of a probationer and that of a parolee. *United States v. Hill*, 967 F.2d 902, 909 (3d Cir.1992).

Fourth or Fourteenth Amendments. *See Lippay v. Christos,* 996 F.2d 1490, 1496, 1501 (3d Cir.1993); *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988); *Patzig v. O'Neil,* 577 F.2d 841, 849 (3d Cir.1978).

■ 22. The Supreme Court in its recent decision in *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), has now signaled emphatically that, to whatever extent the initiation of criminal proceedings by a law enforcement officer constituted a constitutional violation, the Fourteenth Amendment could not serve as the source of the right violated. A plurality of four asserted that, because the type of deprivations alleged by the plaintiff could properly have been addressed under the prohibitions against unreasonable seizure proscribed by the Fourth Amendment, if any claim could be brought at all for restrictions on liberty occasioned by the initiation of legal proceedings it must be brought under that Amendment. *See id.* —— U.S. at ——, 114 S.Ct. at 810–814 (Rehnquist, C.J. announcing the judgment of the court, joined by O'Connor, J., Scalia, J., and Ginsburg, J.).

Because the plaintiff in *Albright* declined to sue under the Fourth Amendment, Chief Justice Rehnquist declined to specifically address in his opinion whether plaintiff's claim could have been properly brought under the Fourth Amendment, or what the nature of possible violations could be under the Fourth Amendment. However, nothing in his opinion, or the opinion concurring in the judgment by Justice Ginsburg, suggests that the circumstances of the prosecution of the plaintiff in the case before me, independent of his arrest, would constitute a constitutional violation.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

By grounding plaintiff Albright's claim in the Fourth Amendment, the Court has clearly removed officer misconduct from the aegis of constitutional tort. Instead, a pretrial deprivation of liberty or property by a law enforcement official is actionable only if it constitutes an improper seizure under the Fourth Amendment.

23. Nothing in Chief Justice Rehnquist's opinion suggests that he envisions a Fourth Amendment seizure to mean anything more than the event of the state taking control of a defendant for the purposes of beginning criminal legal proceedings against her. This will most often occur in the context of a police officer physically taking the defendant into custody by arresting him or her, but may also occur as the result of the defendant submitting him or herself for arrest as Albright did, or possibly by the issuing of a summons and criminal complaint. *See Albright,* —— U.S. at ——, 114 S.Ct. at 816 (Ginsburg, J., concurring) (citing 2 W. La-Fave, Search and Seizure 432–36 (2d ed. 1987)). Chief Justice Rehnquist emphasized that "the accused is not 'entitled to judicial oversight or review of the decision to prosecute.'" *Albright,* —— U.S. at ——, 114 S.Ct. at 813 (citations omitted). The Chief Justice also noted that the plaintiff in the case before him might have been able to maintain a Fourth Amendment claim because he "was not merely charged; he submitted himself to arrest." *Id.*

24. Justice Ginsburg's separate opinion concurring in the judgment does not contradict this understanding. Her opinion fully supports my characterization of Chief Justice Rehnquist's opinion that only the state official's act of seizing or asserting their grip around the criminal defendant is actionable, as opposed to any later prosecution activities. Indeed she emphasizes that any activities which are properly attributed to prosecution functions would be subject to the absolute immunity with which prosecutorial activities are shielded. *Id.* —— U.S. at —— n. 5, 114 S.Ct. at 816 n. 5.

The import of Justice Ginsburg's separate opinion does not appear to be an expansion of the type of activities which might constitute a seizure, but to clarify what types of depriva-

tion beyond physical custody are sufficient to make the seizure activity actionable.

> This view of the definition and duration of a seizure comports with common sense and common understanding. A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject, as in this case, to the condition that he seek formal permission from the court (at significant expense) before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense.

*Id.* —— U.S. at ——, 114 S.Ct. at 815.

Justice Ginsburg's opinion acknowledges that a defendant need not be kept in physical custody to be seized by the state. However, she does not in any way suggest that there are any acts which constitute a seizure by a law enforcement individual, such as testimony at a preliminary hearing, separate from the initial act by which the state seizes control over the defendant in order to carry out legal proceedings.

25. Justice Souter, who concurred in judgment because he did not want to concede the same limitations on substantive due process as the plurality,[2] otherwise reinforces the plurality's Fourth Amendment analysis. Justice Souter emphasizes that plaintiff's substantial list of damages was "alleged to have followed from the issuance of the formal instrument of prosecution, as distinct from the ensuing assertion of custody." *Albright,* —— U.S. at ——, 114 S.Ct. at 821. He continued

> [I]t is not surprising that rules of recovery for such harms have naturally coalesced under the Fourth Amendment, since the injuries usually occur only after an arrest or other Fourth Amendment seizure, an event that normally follows promptly ... upon the formality of filing an indictment, information, or complaint. There is no restraint on movement until a seizure occurs or bond terms are imposed. Damage to reputation and all of its attendant harms also tend to show up after arrest. The defendant's mental anguish (whether premised on reputational harm, burden of defending, incarceration, or some other consequence of prosecution) customarily will not arise before an arrest, or at least before the notification that an arrest warrant has been issued informs him of the charges.

*Id.* —— U.S. at ——, 114 S.Ct. at 822.

26. Justice Kennedy's opinion concurring in the result, joined by Justice Thomas, asserts that the Bill of Rights prescribes what guarantees are owed defendants in pre-trial proceedings, and that a protection against prosecutions initiated without probable cause are not included among them. *See id.* —— U.S. at ——, 114 S.Ct. at 817–18 (Kennedy, J., concurring). The opinion recognizes an interest in avoiding the anguish and torment of an improperly prosecuted criminal trial for which due process was owed. *Id.* —— U.S. at ——, 114 S.Ct. at 818. However, that due process right is sufficiently fulfilled by a post-deprivation procedure such as the availability of a state tort cause of action. *Id.* —— U.S. at ——, 114 S.Ct. at 818–19. If a state tort remedy is available than there is no deprivation of due process rights for which a § 1983 suit could be brought. Because Pennsylvania has a common law malicious prosecution tort through which the plaintiff could be vindicated, his constitutional right against improper prosecution is protected.

---

**2.** Justice Souter left some room for a substantive due process claim for harm created by a prosecution that somehow does create severe harms independent of an initial seizure. *Albright,* —— U.S. at ——, 114 S.Ct. at 822. The most abusive of prosecution oriented activities might also be characterized as a procedural due process violation. *Cf. id.* —— U.S. at ——, 114 S.Ct. at 814 (Scalia, J., concurring). Because plaintiff in this case alleges no independent harms from the prosecution phase of his pre-trial proceedings—he properly remained in custody following arrest throughout the pre-trial period because of his parole status—I need not address in this case whether some due process cause of action remains for the most egregious, unique, "conscience-shocking" abuses carried out during the post-seizure period of pre-trial proceedings.

Accordingly, plaintiff's claim grounded in malicious prosecution could not be maintained under these concurring justices's analysis. Justices Kennedy and Thomas account for a sixth and seventh vote along with the plurality and Justice Souter whose treatment of constitutional claims grounded in prosecution activities by law enforcement officials would not accommodate plaintiff's charge in this case.

27. Therefore, plaintiff, in order to make out a claim against Officer McGuire, must ground it only in his seizure—his arrest—not the subsequent prosecution. The arrest of a parolee need only be justified by "reasonable grounds." *United States v. Butcher,* 926 F.2d 811 (9th Cir.1991); *United States v. Cardona,* 903 F.2d 60 (1st Cir.1990), cert. denied, 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991); *United States v. Lindsey,* 395 F.Supp. 404, 407 (E.D.Pa.1975). It is not necessary for me to pierce the defendants thoughts for the actual reason he arrested the plaintiff as the determination of probable cause for arrest is an objective test evaluated in relation to all the information the arresting officer had when he arrested, not a subjective examination of what defendant was actually arrested for. *See United States v. Massac,* 867 F.2d 174, 175 (3d Cir. 1989); *United States v. Hawkins,* 811 F.2d 210, 215 (3d Cir.1987), cert. denied, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Lester,* 647 F.2d 869, 873 (8th Cir.1981).

■ 28. Defendant arrested plaintiff for allegedly assaulting him by pushing him down a flight of stairs. Plaintiff denies even touching defendant or displaying any hostility towards him, and was acquitted on the charge of simple assault at trial. Accordingly, a material issue of fact remains regarding whether defendant had *any* cause to arrest plaintiff.[3]

29. Defendant also asserts that plaintiff had violated parole conditions. Were this the case, defendant would have had cause to arrest plaintiff. 61 P.S. § 309.1. However,

defendant has introduced only two pieces of evidence which suggest misconduct by the plaintiff. The first is a report regarding plaintiff's failure to attend drug therapy. That report was specifically characterized as a "Warning." Furthermore, the report was issued in April of 1992, approximately five months before plaintiff was arrested. Even were it considered a violation, allowing the failure to attend therapy to serve as cause for arrest five months after it occurred would violate the PBPP's obligation to take punitive actions for within a reasonable period after the violations occurred. Pa.R.Crim.P. 1409; *Com. v. Williams,* 254 Pa.Super. 202, 385 A.2d 979, 982 (1978).

The only other piece of evidence suggesting misconduct by the plaintiff was a letter written by defendant McGuire warning him that his failure to attend an October 7 constituted non-compliance with his parole conditions. It instructed him to attend an October 19 meeting, and stated that *"failure to appear ... will result in a violation."* The defendant's own evidence reveals that plaintiff did attend that meeting. Accordingly, the letter does not constitute evidence that plaintiff was in violation of his release terms in a manner which constituted grounds for arrest. Indeed, in the arrest reports filled out after the confrontation at plaintiff's residence the only specific parole violation cited besides the alleged assault was the April warning regarding drug treatment.

Defendants point in their brief to numerous other exhibits supporting the contention that plaintiff was in violation of parole. None of these exhibits, however, contain any evidence of specific violations or even reports filed previous to the incident at the Patterson house suggesting a general pattern of violations which would constitute grounds for arresting the plaintiff.

30. I find that the constitutional right against arrest without probable cause is a "clearly established" one, and therefore defendant McGuire is not shielded by qualified immunity. *Patzig v. O'Neil,* 577 F.2d 841,

---

3. Plaintiff's admission in a letter that he did grab defendant's arm, may be used at trial to contradict his assertion that he never touched defendant McGuire. However, it does not remove the material issue of fact for purposes of summary judgment created by the evidence of plaintiff's blanket denial, made under oath in a criminal trial, of physical contact.

849 (3d Cir.1978). Accordingly, I will deny summary judgment on plaintiff's false arrest claim.

31. Plaintiff has also alleged counts under 42 U.S.C. § 1981. Defendant did not address these counts in its motion for summary judgment, and therefore I decline to do so as well.

32. All defendants are immune from liability for the causes of action under state law under Pennsylvania law of sovereign immunity. 1 Pa.C.S.A. § 2310.

THEREFORE, IT IS ORDERED that

1. Defendants' Motion for Summary Judgment is GRANTED as to all plaintiff's counts claiming violation of the Fourth Amendment for the warrantless entry and search of plaintiff's residence.

2. Defendants' Motion for Summary Judgment is GRANTED as to all plaintiff's counts grounded in violation of state law.

3. Defendants' Motion for Summary Judgment is GRANTED as to all plaintiff's counts seeking for damages against the Board of Probation and against defendant McGuire in his official capacity.

4. Defendants' Motion for Summary Judgment is GRANTED as to plaintiff's count against defendant McGuire alleging false testimony.

5. Defendants' Motion for Summary Judgment is GRANTED as to all plaintiff's counts characterized as malicious prosecution or filing of charges.

6. Defendants' Motion for Summary Judgment is DENIED as to plaintiff's count alleging arrest without probable cause.

7. Defendants' Motion for Summary Judgment is DENIED as to plaintiff's counts requesting injunctive relief pending plaintiff's clarification of the specific relief desired. Plaintiff will submit, no more than ten days from the issuing date of this order, an amendment to the complaint stating specifically the injunctive relief requested or summary judgment will be granted.