Anderson v. Peterson, et al.          CV-02-315-M    12/31/03
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Clint Anderson,
       Plaintiff

       v.                                 Civil No. 02-315-M
                                          Opinion No. 2003 DNH 226
Robert Peterson, Lynda
Warhall, John Doe, New
Hampshire Adult Parole
Board, Thomas Hammond,
George Iverson, Cecile
Hartigan, Amy Vorenberg,
and Thomas Winn,
       Defendants


                         **O R D E R**


       This case[1] arises from a search of parolee Clint Anderson's

home by two state parole officers (Robert Peterson and Lynda

Warhall) and a Concord police officer.  Anderson seeks damages,

under 42 U.S.C. § 1983, for violation of his Fourth Amendment

right to privacy, and also seeks a declaration that the

regulation under which the search was conducted, N.H. CODE ADMIN.

R. Par. 401.02(b)(9), is unconstitutional.  Before the court is

an unopposed motion for summary judgment filed by defendants

---

       [1] By order dated June 25, 2002 (document no. 26), Civil No.
02-315-M was consolidated with Civil No. 02-516-M for all
purposes.

Pearson, Hammond, Iverson, Hartigan, Eckert, Vorenberg, and Winn. For the reasons given below, defendants' motion for summary judgment is granted in part and denied in part.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact." Perez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001) (citing Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000)). When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro v. Pfizer, 261 F.3d 90, 94 (1st Cir. 2001) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

## Background

On March 3, 1994, Anderson was sentenced to prison for not less than five years and not more than ten years for the crime of aggravated felonious sexual assault. (Defs.' Mot. Summ. J., Ex. T.) On July 24, 2000, Anderson was paroled. (Defs.' Mot. Summ. J., Ex. B at 1.) Under the general conditions of his parole, Anderson agreed to "permit the parole officer to visit [his] residence at any time for the purpose of examination and inspection in the enforcement of the conditions of parole and submit to searches of [his] person, property, and possessions as requested by the parole officer." (Defs.' Mot. Summ. J., Ex. B at 2.)[2] The specific conditions and restrictions of Anderson's

---

[2] That parole condition is derived from the Administrative Rules of the Adult Parole Board, which provide, in pertinent part, that all parolees shall "[p]ermit[] the parole officer to visit parolee's residence at any time for the purpose of examination and inspection in the enforcement of the conditions of parole and submit to searches of his person, property, and possessions as requested by the parole officer." N.H. CODE ADMIN. R. Par. 401.02(b)(9).

In order to assist its field services staff, including parole officers, in carrying out their duties, the Department of Corrections has promulgated various policy and procedure directives ("PPDs") pertaining to searches. According to PPD 5.6, titled Supervision of Adult Offenders, the Rules and Regulations of Probation and Parole include the following:

> I will submit to <u>reasonable</u> searches of my person, property and possessions as requested by the P/PO and

3

parole included: participating in and satisfactorily completing

sex offender counseling (Rule 13C); remaining out of the

unsupervised company of minors at any time (Rule 13E); refraining

totally from the use of alcoholic beverages (Rule 13G); and

abiding by all terms and conditions of an Intensive Parole

Supervision ("ISP") contract (Rule 13I).  (Defs.' Mot. Summ. J.,

Ex. B at 2.)  The ISP contract, in turn, contained the following

---

permit the P/PO to visit my residence at reasonable
times for the purpose of examination and inspection in
the enforcement of the conditions of Probation and
Parole.  (The key words in this rule are "reasonable"
and "purpose".  Any home visit should include a casual
inspection of the premises.  Guidance for in-depth
searches is contained in the section on Rehabilitative
Inspections, Contraband and Evidence.)

(Defs.' Mot. Summ. J., Ex. M (PPD 5.6(IV)(D)(6)(h) at 5 (emphasis
added).)  PPD 5.77, titled "Searches and Inspections," contains
the following provision:

EVIDENCE OF A NEW CRIME
1.    When other law enforcement agencies seek
      assistance in looking for evidence of a new crime,
      care must be taken to avoid invalidating the new
      evidence.  Substituting administrative searches
      under our authority to avoid the warrant process
      for other agencies could invalidate the evidence.
      In latter hearings the court will make a decision
      on evidence suppression based on the actual basis
      for the search.  We must be careful not to use
      administrative authority as a substitute for a
      warrant.

(Defs.' Mot. Summ. J., Ex. O (PPD 5.77(IV)(C)(1) at 3.)

4

relevant provision: "I understand and agree to submit to a search of my person, property, possessions and residence at any time of the day or night as requested by the Intensive Supervision Officer."  (Defs.' Mot. Summ. J., Ex. C.)  Both the standard "Parole Conditions and Restrictions" form and the "Intensive Supervision Program Participation Contract" bear Anderson's signature.

In June 2001, Anderson violated the terms of his parole. (Defs.' Mot. Summ. J., Exs. E-H.)  He was terminated from sex offender counseling,[3] which placed him in violation of Rule 13C, and he failed to abstain from the consumption of alcoholic beverages, in violation of Rule 13G.  (Defs.' Mot. Summ. J., Ex. I.)  Anderson admitted those violations, and was returned to parole status under several additional conditions.  (Defs.' Mot. Summ. J., Ex. G.)  His ISP contract appears to have remained in effect.  (Defs.' Mot. Summ. J., Ex. G.)

---

[3] He was terminated from sex offender counseling for having unapproved sexual relations and for consuming alcohol.  (Defs.' Mot. Summ. J., Exs. F-G.)

On November 13, 2001, Anderson's parole officers, Warhall and Peterson, learned from the Concord Police Department that a fifteen-year-old female runaway, Crystal, had made calls from Anderson's home phone and from his cell phone. (Defs.' Mot. Summ. J., Ex. A (Peterson Aff.) ¶ 11.) That same day, Anderson was contacted on his cell phone, at his place of work in Massachusetts, by a Concord police officer, who asked him where Crystal was. (Am. Compl. ¶ 12.) Anderson told the officer he did not know. (Am. Compl. ¶ 14.) After trying, unsuccessfully, to reach Peterson by phone, to report the police contact, Anderson subsequently received a call from Peterson. (Am. Compl. ¶¶ 16, 18.) When Peterson asked Anderson about Crystal, Anderson denied having any contact with her, other than allowing her, on one occasion, to use his cell phone. (Peterson Aff. ¶ 11.) Peterson ordered Anderson to return to Concord as soon as possible, and Anderson agreed to meet Peterson at 6:30 p.m. (Am. Compl. ¶¶ 19-20.)

While Anderson was returning to Concord, Peterson conducted a "rehabilitative inspection to determine whether Anderson or the runaway were in the apartment, as well as, to determine whether

Anderson was violating the terms of his parole." (Peterson Aff. ¶ 14.) After a cursory search, Peterson identified in plain view in Anderson's kitchen, and subsequently seized, items that appeared to belong to a female minor. (Peterson Aff. ¶ 15.) When Anderson pulled into his driveway, he saw Peterson, Warhall, and the Concord officer coming out of his apartment. (Am. Compl. ¶ 26.) Shortly thereafter, Anderson and his passenger were removed from their vehicle at gun point. (Am. Compl. ¶ 27.) Peterson informed Anderson that his apartment had been searched and that the search had yielded some of Crystal's clothing. (Am. Compl. ¶ 29.)

Based upon the discovery of Crystal's clothing in his apartment, Anderson was charged with violating the terms of his parole by allowing Crystal to reside with him for approximately one week, and for lying to his parole officer about Crystal's presence in his residence. (Defs.' Mot. Summ. J., Ex. J.) After a revocation hearing, at which he pled guilty, Anderson was given a six-month setback. (Defs.' Mot. Summ. J., Ex. H.) He was again paroled on September 3, 2002. (Defs.' Mot. Summ. J., Ex. Q.) The "Parole Conditions and Restrictions" form Anderson

7

signed on September 3 was identical to the form he signed upon his previous parole, and included the provision requiring him to submit to searches at the request of his parole officers. (Defs.' Mot. Summ. J., Exs. B and Q.) The record does not indicate that Anderson objected to the search condition at the time of his parole. The portion of the form detailing special conditions refers to Anderson being under intensive supervision, but does not mention a separate ISP contract. (Defs.' Mot. Summ. J., Ex. Q.)

While in prison serving his setback, Anderson filed a petition for a writ of habeas corpus in the New Hampshire Superior Court. (Defs.' Mot. Summ. J., Ex. R.) In that petition, he argued that his incarceration was unconstitutional because: (1) the Parole Board denied him a timely preliminary hearing on one of two warrants charging him with a parole violation; (2) after he was arrested for violating parole, he was held in custody for more than the forty-five days allowed by statute; (3) the Parole Board denied him equal protection of the law by failing to release him when no revocation hearing had been held within forty-five days, despite the fact that others

8

similarly situated had been released; and (4) at his revocation hearing, his parole officer failed to present the Parole Board with a statement Crystal gave to the Concord police that would have supported his claim that he had been misled into believing that she was over eighteen years old. (Defs.' Mot. Summ. J., Ex. R.) His petition for habeas relief did not mention the parole condition requiring him to submit to searches. The Superior Court denied Anderson's petition, ruling that none of his "procedural or substantive rights under the New Hampshire or the United States Constitution were violated." (Defs.' Mot. Summ. J., Ex. S.)

Based upon the foregoing, Anderson filed two suits in this court that were consolidated. In his consolidated action, Anderson asserts a § 1983 claim for compensatory and punitive damages against Peterson, Warhall, and the (unnamed) Concord police officer, for conducting a search of his home that was unreasonable, and therefore unconstitutional, and he seeks a declaratory judgment that the regulation governing searches of parolees is facially unconstitutional.[4]

---

[4] In his complaint in 02-315-M, plaintiff contended that "[t]he parole regulation authorizing the search of Plaintiff's

9

**Discussion**

Defendants Peterson, Hammond, Iverson, Hartigan, Eckert,[5] Vorenberg, and Winn (hereinafter "defendants") move for summary judgment, arguing that: (1) Peterson's search of Anderson's home did not violate the Fourth Amendment; (2) the Parole Board's search rule is not unconstitutional as applied; (3) both of plaintiff's suits are barred by res judicata; and (4) the doctrine of qualified immunity bars plaintiff from recovering money damages.

I.    The § 1983 Claim

Plaintiff's § 1983 claim is set out in his amended complaint (document no. 11) as follows:

---

residence is unconstitutional on grounds of vagueness and overbreadth." (Am. Compl. ¶ 52.) In his petition for declaratory judgment in 02-516-M, plaintiff appears only to assert that the regulation is unconstitutionally vague. (Pet. ¶¶ 9, 17-18.) Defendants, on the other hand, have construed Anderson's facial challenge to the regulation as a claim of overbreadth.

   In 02-315-M, Anderson also raised a due process challenge to various procedures employed by the Parole Board, but that claim was dismissed by a November 15, 2002, order (document no. 14) adopting an October 15, 2002, Report and Recommendation (document no. 10).

   [5] Eckert has already been dismissed.

> The parole regulation authorizing the search of Plaintiff's residence is unconstitutional on grounds of vagueness and overbreadth. That the actions of Parole [o]fficers Peterson and [Warhall] were not reasonable as to the search they conducted. That the actions of defendants violated Plaintiff's right to be free from unreasonable searches and seizures.
>
> . . .
>
> The actions of defendants Robert Peterson, Lynda [Warhall], and John Doe [the Concord officer] in entering the Plaintiff's apartment by force, failing to make a valid request to make a warrantless search as required by regulation, conducting the search without Plaintiff present, and conducting said search to aid in a law enforcement investigation, violated the due process rights of the Plaintiff under the Fourteenth Amendment to the US Constitution and his rights to be protected from unreasonable searches and seizures under the Fourth Amendment to the US Constitution.

(Am. Compl. ¶¶ 52, 55(A)(3)). In addition, Anderson makes the suggestion, albeit in the supporting affidavit attached to his original complaint, that once Peterson had enough information to arrest him for violating the conditions of his parole, his work as a parole officer was finished and he became an agent of the police, and needed a warrant to conduct a search of his apartment. (Anderson Aff. at 1.) Defendants argue that Peterson's search did not violate the Fourth Amendment under the standards set out in Griffin v. Wisconsin, 483 U.S. 868 (1987),

11

and United States v. Knights, 534 U.S. 112 (2001).  The court agrees.

In Griffin, the Supreme Court held that a warrantless search of a probationer's "residence was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers."  483 U.S. at 880.  That regulation, in turn, was constitutionally sufficient because it allowed a probation officer to search a probationer's home, without a warrant, only "as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband – including any item that the probationer cannot possess under the probation conditions."  Id. at 871 (citation omitted).

More recently, in Knights, the Supreme Court expanded the authority of probation officers to conduct warrantless searches.  The search in Knights was conducted pursuant to a condition under which plaintiff, a probationer, agreed to "[s]ubmit his . . . person, property, place of residence, vehicle, [and] personal effects, to search at anytime, with or without a search warrant,

12

warrant of arrest or reasonable cause by any probation officer or law enforcement officer." 534 U.S. at 114. After conducting an "ordinary Fourth Amendment analysis that consider[ed] all the circumstances of [the] search," id. at 122, but which did not mention any probation regulation other than the condition to which Knights was subject, the Supreme Court held that "the warrantless search of Knights, supported by reasonable suspicion and authorized by a condition of probation, was reasonable within the meaning of the Fourth Amendment." Id.

Here, Anderson was subject to both a general parole condition and a special condition that allowed for searches as requested by the parole officer. But, unlike the condition in Knights, neither of the conditions applicable to Anderson expressly allowed a search without reasonable cause. Thus, the probation condition in Knights was measurably less protective of Fourth Amendment rights than the regulation, or the two parole conditions, in this case. In addition, the search of Anderson's apartment was supported by reasonable suspicion, and likely probable cause, for Peterson to believe that Anderson had violated the conditions of his parole. As Anderson himself

13

acknowledges, he admitted to a relevant parole violation in his cell phone conversation with Peterson.  Under those conditions, Anderson was not allowed to be in the unsupervised company of minors, and Peterson had information from a reliable source – the Concord Police Department – that telephone calls had been made from both Anderson's home phone and cell phone by a runaway minor.  Under the circumstances, it was reasonable, within the meaning of the Fourth Amendment, for Peterson to search Anderson's apartment in order to determine how, and to what extent, Anderson had violated his parole conditions.

Anderson's various arguments to the contrary are unavailing. On the undisputed factual record, Peterson's search was not an investigatory search for law enforcement purposes that required a search warrant.  Neither the assistance of a Concord police officer in the search, nor the fact that it was initiated by information the police provided, is enough to transform Peterson's search from a parole compliance search into an investigatory search for law enforcement purposes.  See, e.g., Knights, 534 U.S. at 115 (constitutionally permissible probation search was conducted by Sheriff's Department detective, based

14

upon his own investigation); <u>Griffin</u>, 483 U.S. at 871 (constitutionally permissible probation search based upon police tip was conducted by probation officers accompanied by police officers); <u>see also</u> <u>United States v. Watts</u>, 67 F.3d 790, 794 (9th Cir. 1995), <u>rev'd on other grounds</u>, 519 U.S. 148 (1997) ("collaboration between a probation officer and police does not in itself render a probation search unlawful") (citations omitted). Anderson's assertion that Peterson was acting as an agent for the Concord Police is also undermined by the fact that the search did not result in any new charges being brought against him, despite the fact that the search did, in fact, produce clothing belonging to an underage runaway.[6]

---

[6] The absence of new charges against Anderson accounts for the rather unusual procedural posture of this case. Typically, a Fourth Amendment claim arising from a search of a parolee or probationer is presented in a motion to suppress evidence collected during the search, when the government attempts to use that evidence in a trial of new charges arising from the search. <u>See</u>, <u>e.g.</u>, <u>Knights</u>, 534 U.S. at 116; <u>Griffin</u>, 483 U.S. at 872; <u>United States v. Newton</u>, 181 F. Supp. 2d 157, 160 (E.D.N.Y. 2002); <u>United States v. Baker</u>, 221 F.3d 438, 440 (3d Cir. 2000); <u>United States v. Payne</u>, 181 F.3d 781, 785 (6th Cir. 1999); <u>but see</u> <u>Patterson v. Bd. of Prob. & Parole</u>, 851 F. Supp. 194 (E.D. Pa. 1994) (granting summary judgment, on qualified immunity grounds, to parole officer sued under § 1983 for conducting search of parolee that allegedly violated the Fourth Amendment); <u>Diaz v. Ward</u>, 437 F. Supp. 678, 686 (S.D.N.Y. 1977) ("although no prior case under 42 U.S.C. § 1983 involving parolees' Fourth Amendment rights has been found, I conclude that the civil rights statutes afford an entirely appropriate vehicle for asserting

15

Moreover, the fact that Peterson had sufficient evidence to arrest Anderson before the search (based upon Anderson's admission that he had violated the conditions of his parole by allowing Crystal to use his cell phone) did not change the status of Peterson's search from a parole compliance search to an investigatory search for law enforcement purposes. See United States v. Hill, 967 F.2d 902, 911 (3d Cir. 1992) (holding that when parolee was arrested for parole violation, "the parole agents' interest in inspecting [the parolee's] place of residence did not terminate upon his arrest; if anything, it intensified") (internal quotation marks and citations omitted); cf. United States v. Cantley, 130 F.3d 1371, 1376 (10th Cir. 1997) (rejecting parolee's argument that parole officer's search of his residence became unreasonable once the parole officer determined that the parolee was not at home and, therefore, did not pose an immediate threat at that time and place).

Finally, Peterson's search is not rendered unlawful by his failure to ask Anderson for permission to conduct it. In Newton, a parolee "signed a standard certificate of release in which he

_____

their claims that those rights have been infringed").

16

agreed that during his period of supervision, he ' . . . will permit the search and inspection of his person, residence and property.'" 181 F. Supp. 2d at 159. In that case, three parole officers and three police officers handcuffed the parolee and then conducted a search of his mother's apartment, where he was an overnight guest. Id. at 159-69. Because the officers did not ask him for permission to conduct the search when they arrived at his mother's apartment, the parolee argued that the search violated a state parole regulation providing that "a releasee's residence may be searched only . . . with the consent of the releasee . . ." Id. at 162. The district court disagreed, finding that "New York courts have strongly implied that the standard certificate of release means that the parole officers do not need further consent to conduct searches that are reasonably and rationally related to their duty." Id. at 165 (citations omitted). The court went on to note that most courts that have considered the issue "have held that the consent to search signed by a parolee upon his release allows parole officers to perform searches based on reasonable suspicion." Id. at 166 (citing Cherry v. State, 791 S.W.2d 354, 356-57 (Ark. 1990); Commonwealth v. Williams, 692 A.2d 1031, 1036-37 (Pa. 1997); Pena v. State,

17

792 P.2d 1352, 1357 (Wyo. 1990); People v. Reyes, 968 P.2d 445, 455-56 (Cal. 1998)). While the precise wording of the New York parole regulation is somewhat different from that of the New Hampshire regulation, the same reasoning applies. By agreeing to both the general and specific conditions of his parole, Anderson effectively gave the consent required by N.H. CODE ADMIN. R. Par. 401.02(b)(9).

Because the warrantless search of Anderson's apartment was supported by reasonable suspicion, and was authorized by his parole conditions, it was reasonable within the meaning of the Fourth Amendment. See Knights, 534 U.S. at 122.

II. The Facial Challenge to the Parole Regulation

Anderson has also mounted a facial challenge to N.H. CODE ADMIN. R. Par. 401.02(b)(9) in both his amended complaint in 02-316-M, as quoted in the previous section, and in his petition for declaratory judgment. In his petition, he argues that the probation regulation is void for vagueness because it "lacks sufficient guidelines to prevent arbitrary and discriminatory enforcement." (Pet. ¶ 17.) While variously stated in terms of

18

overbreadth and vagueness, Anderson's principal argument seems to be that the Parole Board's regulation is overbroad, because it authorizes searches even when a parole officer lacks reasonable suspicion to believe that a parole violation has occurred (or is void for vagueness, because it does not instruct parole officers that searches of parolees must be supported by reasonable suspicion).  Defendants do not directly address plaintiff's facial challenge, but instead, argue that "the parole board's administrative rule regarding search[es] is not unconstitutional as applied." (Defs.' Mem. of Law at 17.)

Plaintiff's argument is not without merit.  N.H. CODE ADMIN. R. 401.02(b)(9) broadly requires a parolee to "submit to searches of his person, property, and possessions as requested by the parole officer."  The Department of Corrections' policy and procedure directives do describe a reasonableness requirement, but the regulation itself does not.  In United States v. Giannetta, the court of appeals for this circuit observed that the lack of a reasonableness limitation in a probation search condition "theoretically render[ed] the probation search

19

condition overbroad." 909 F.2d 571, 576 (1st Cir. 1990).[7] In

United States v. Jeffers, the Court of Appeals for the Ninth

Circuit held a probation condition unconstitutionally overbroad

because it required probationers to "submit person and property

to search and seizure at any time of the day or night when so

requested by a probation officer with or without a warrant and

with or without probable cause." 573 F.2d 1074, 1075 (9th Cir.

1978).[8] Finally, in State v. Moses, in a direct appeal of a

sentence to probation, the Vermont Supreme Court sustained a

facial challenge to a probation condition requiring a probationer

to "consent in writing to all inspections and enforcement of

these conditions, including search and investigation without

---

[7] The special probation condition in Giannetta required the probationer "at all times during his period of probation, [to] readily submit to a search of his residence and of any other premises under his dominion and control, by his supervising probation officer, upon the officer's request." Id. at 573. However, because "the decision to search was in fact narrowly and properly made on the basis of reasonable suspicion," id. at 576, the court held that the search did not violate the Fourth Amendment and "expressed no opinion as to whether the type of broad search condition [in that case] could routinely be imposed on all probationers," id. at 576 n.2.

[8] Like the court in Giannetta, the Jeffers court upheld the challenged search, in the context of a motion to suppress, because the overbroad search authority was "narrowly and properly exercised." Id. (citing United States v. Gordon, 540 F.2d 452, 454 (9th Cir. 1976)).

warrant when necessary." 618 A.2d 478, 480 (Vt. 1992).[9] Thus, persuasive authority supports the conclusion that N.H. CODE ADMIN. R. Par. 401(b)(9), as written, is unconstitutionally overbroad on its face.[10]

Defendants have not briefed, or even addressed, plaintiff's facial challenge to N.H. CODE ADMIN. R. Par. 401.02(b)(9), perhaps recognizing its merit. In any event, resolution of that issue is purely a question of law. Defendants shall either show cause, within thirty days of the date of this order, why Par. 401.02(b)(9) should not be declared unconstitutional, or, amend

---

[9] Moses is the only facial challenge to a probation or parole search condition the court has been able to locate. Facial challenges are rare, it seems, because searches of probationers and parolees are litigated, for the most part, in motions to suppress evidence filed in criminal cases arising from the discovery of contraband or other evidence during such searches.

[10] As plaintiff points out in his petition, the New Hampshire Supreme Court has not had occasion to construe N.H. CODE ADMIN. R. Par. 401(b)(9). However, it is worth noting that the court's decision in State v. Zeta Chi Fraternity, 142 N.H. 16 (1997), should not be read as suggesting that the Supreme Court would construe Par. 401(b)(9) not to include a reasonable suspicion requirement. Zeta Chi involved a specific condition of probation, imposed by a sentencing court, rather than an agency regulation of general applicability. Thus, the holding in Zeta Chi has little bearing on the construction the New Hampshire Supreme Court might give N.H. CODE ADMIN. R. Par. 401.02(b)(9).

the rule to include the reasonable suspicion requirement described in Griffin and Knights.

## Conclusion

For the reasons given, defendant's motion for summary judgment (document no. 27) is granted in part and denied in part. The motion is granted with respect to plaintiff's § 1983 claim, and judgment shall enter in favor of defendants. The motion is denied with respect to plaintiff's petition for declaratory judgment. The case will proceed on that theory alone, as outlined above. Trial, previously scheduled for February 2004, is no longer required.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

December 31, 2003

cc:  Clint Anderson
     Michael K. Brown, Esq.
     Lynda Warhall